| | |
|---|---|
| PETER MOCCO, LORRAINE MOCCO AND FIRST CONNECTICUT HOLDING GROUP LLC, IV, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiffs, | CIVIL ACTION NO. 12-1458 (DMC)(JAD) |
| vs. | Hon. Dennis M. Cavanaugh, U.S.D.J. |
| | Hon. Joseph A. Dickson, U.S.M.J. |
| AEGIS FRUMENTO AND CHICAGO TITLE INSURANCE COMPANY, | |
| Defendants. | |

## CHICAGO TITLE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Defendant Chicago Title Insurance Company

Of Counsel:
    Michael R. O'Donnell, Esq.

On the Brief:
    Derrick R. Freijomil, Esq.
    Jonathan M. Sandler, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTS AND PROCEDURAL HISTORY .............................................................. 3

A.    BACKGROUND ......................................................................................... 3

B.    THE MOCCO STATE COURT ACTION ................................................ 4

    1.    PLAINTIFFS'    FIRST    AMENDED    AND
        SUPPLEMENTED COMPLAINT ........................................................ 4

    2.    PLAINTIFFS'    SECOND    AMENDED    AND
        SUPPLEMENTED COMPLAINT ........................................................ 5

    3.    PLAINTIFFS' PROPOSED THIRD AMENDED AND
        SUPPLEMENTED COMPLAINT ........................................................ 5

    4.    DENIAL   OF  PLAINTIFFS'  MOTION  TO  ASSERT
        CLAIMS AGAINST CHICAGO TITLE ............................................. 7

C.    THE INSTANT ACTION ............................................................................ 9

LEGAL ARGUMENT ....................................................................................... 10

I.    STANDARD OF REVIEW ...................................................................... 10

II.    PLAINTIFFS FAIL TO STATE CLAIMS AGAINST CHICAGO
    TITLE FOR ACTIONABLE UNDERLYING WRONGFUL ACTS .......... 12

A.    PLAINTIFFS DO NOT ALLEGE ANY DUTY ......................................... 13

    1.    NEGLIGENT SUPERVISION CLAIM ............................................. 14

    2.    ALLEGED COMMISSION OF A TORT CLAIM ............................. 18

**TABLE OF CONTENTS**
**(CONTINUED)**

B.    PLAINTIFFS FAIL TO ASSERT ANY ACTIONABLE
      WRONG.................................................................................. 19

III.  PLAINTIFFS FAIL TO ADEQUATELY ALLEGE A
      CONSPIRACY ....................................................................... 21

IV.   ALTERNATIVELY, PLAINTIFFS' CLAIMS AGAINST CHICAGO
      TITLE FAIL FOR ADDITIONAL AND INDEPENDENT
      REASONS................................................................................. 22

A.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL
      CONSPIRACY      THROUGH      NEGLIGENT
      SUPERVISION........................................................................ 22

B.    PLAINTIFFS FAIL TO ALLEGE FRAUD WITH
      SPECIFICITY .......................................................................... 23

CONCLUSION ................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Alexander v. CIGNA Corp.,
    991 F. Supp. 427 (D.N.J.), aff'd 172 F.3d 859 (3d Cir. 1998) ................................19

Amabile v. Lerner,
    64 N.J. Super. 507 (Ch. Div. 1960), aff'd, 74 N.J. Super. 443 (App. Div.
    1962) ........................................................................................................................21

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ................................................................................10, 11, 20

Bello v. Lyndhurst Bd. of Educ.,
    344 N.J. Super. 187 (App. Div. 2001) ..............................................................12, 20

D'Arrigo v. South Jersey Hosp. System, Inc.,
    2006 WL 2795337 (N.J. Super Law. Div. Aug. 25, 2006) ....................................21

Fowler v. UPMC Shadyside,
    578 F.3d 203 (3d Cir. 2009) ..................................................................................11

Frederico v. Home Depot,
    507 F.3d 188 (3d Cir. 2007) ..................................................................................24

Gennari v. Weichert Co. Realtors,
    148 N.J. 582 (1997) ...............................................................................................23

Hammer v. Hair Sys., Inc.,
    2009 WL 1686820 (N.J. Super. Ct. App. Div. June 18, 2009) ...................12, 19, 21

Iacaponi v. New Amsterdam Cas. Co.,
    379 F.2d 311 (3d Cir. 1967) ..................................................................................11

Johnson v. Usdin Louis Co., Inc.,
    248 N.J. Super. 525 (App. Div. 1991) ...........................................................13, 14, 17

Judson v. Peoples Bank &Trust Co.,
    25 N.J. 17 (1957) ............................................................................................12, 20

Lum v. Bank of Am.,
    361 F.3d 217 (3d Cir. 2004), cert. den., 543 U.S. 918 (2004)...................................11

Neitzke v. Williams,
    490 U.S. 319 (1989) ........................................................................................10

Sandler v. New Jersey Realty Title Ins. Co.,
    36 N.J. 471 (1962) ...........................................................................................20

Shogen v. Global Aggressive Growth Fund, Ltd.,
    2007 WL 1237829 (D.N.J. Apr. 26, 2007) ....................................................19

Soto v. Quicken Loans, Inc.,
    2010 WL 5169024 (D.N.J. Dec. 14, 2010).........................................20, 23, 24

Strachan v. John F. Kennedy Memorial Hosp.,
    109 N.J. 523 (1988) .........................................................................................13

Theobald v. Dolcimascola,
    299 N.J. Super. 299 (App. Div. 1997) ............................................................13

United Jersey Bank v. Kensey,
    306 N.J. Super. 540 (App. Div. 1997) ........................................................13, 19

Walker-Rogge, Inc. v. Chelsea Title & Guar. Co.,
    116 N.J. 517 (1989) .........................................................................................16

Weil v. Express Container Corp., et al.,
    360 N.J. Super. 599 (App. Div. 2003) ...................................................... passim

Zielinski v. Professional Appraisal Assocs.,
    326 N.J. Super. 219 (App. Div. 1999) ............................................................13

**STATUTES**

N.J.S.A. 17:46B-1, et seq..................................................................................20

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................10

iv

## PRELIMINARY STATEMENT

Chicago Title Insurance Company ("Chicago Title) submits this brief in support of its motion to dismiss the claims against it alleged by plaintiffs Peter and Lorraine Mocco (the "Moccos") and First Connecticut Holding Group LLC, IV ("FCHG-IV" and, collectively with Moccos, "Plaintiffs"). These claims have their genesis in three transactions in which Chicago Title issued title insurance policies to insureds. Plaintiffs have sued these insureds (and many others) in New Jersey State Court, claiming that they own properties clear of the claims of the insureds. That apparently is not enough, as Plaintiffs now try for the fourth time to bring claims against Chicago Title, despite the fact that Chicago Title did not issue any title policies to Plaintiffs and had no relationship whatsoever with them. Undeterred by this reality, Plaintiffs try to manufacture claims against Chicago Title under the labels: "Aiding a Civil Conspiracy Through Negligent Supervision" and "Conspiracy to Aid in the Commission of a Tort." Simply put, Plaintiffs' claims lack merit and should be dismissed outright, for several reasons.

First, as the State Court recognized when it denied Plaintiff's motion to amend their complaint to assert a claim against Chicago Title, Chicago Title owed no duty to Plaintiffs in connection with the subject transactions it insured. Without a duty, Plaintiffs' claims fail as a matter of law. Indeed, Plaintiffs effectively seek to rewrite title insurance law by attempting to impose a duty on the

title insurer to the adverse claimant of the title company's insureds. That proposition is absurd.

Second, Plaintiffs fail to allege that Chicago Title committed any actionable wrong. All that Chicago Title did here was issue title insurance policies to its insureds. Such a statutorily-authorized act cannot be actionable, and Plaintiffs provide no basis to conclude otherwise.

Third, Plaintiffs' conspiracy theory focuses on Chicago Title's interaction with its policy-issuing agent. Yet, they fail to explain how a title company's interaction with its own policy-issuing agent supports a "conspiracy."

Fourth, dismissal of Plaintiffs' claims against Chicago Title is independently warranted. As to their "negligent supervision" claim, Plaintiffs fail to allege how Chicago Title purportedly "conspired" to "negligently supervise" is own policy-issuing agent and fail to allege any intentional acts on the part of Chicago Title necessary to support an alleged "conspiracy." Their conclusory allegations of a "conspiracy" to commit some unidentified "tort" fail to satisfy the specificity requirements under Rule 9(b), which is not salvaged by Plaintiffs' effort to lump Chicago Title in with other alleged wrongdoers. Thus, for these independent reasons alone, Plaintiffs' claims alleged against Chicago Title must be dismissed.

# FACTS AND PROCEDURAL HISTORY[1]

### A.    Background

Plaintiffs' claims against Chicago Title relate to three transactions:

- The ownership of FCHG-IV, which owned multi-family properties in Jersey City and North Bergen, New Jersey (the "North Jersey Properties") and sold them to SWJ Holdings, LLC ("SWJ") on May 25, 2006.  Compl. at ¶¶ 31 & 95.

- The assignment of a mortgage originally given to First Connecticut Consulting Group, Inc. ("FCCG") by Lorraine Mocco on property she owned in Bernardsville, New Jersey (the "Bernardsville Mortgage"), which mortgage was ultimately assigned to Skyland Investments, LLC ("Skyland") on November 16, 2005.  Compl. at ¶ 75.

- The assignment of mortgage given to FCCG by Lorraine Mocco on property she owned in Sayreville, New Jersey (the "Sayreville Mortgage"), which was assigned to Dare Investments, LLC ("Dare") on March 13, 2006.  Compl. at ¶ 140; April 27, 2012 Certification of Derrick R. Freijomil, Esq. ("Freijomil Cert.") at Exh. A.

Horizon Title Agency Inc. ("Horizon"), Chicago Title's policy-issuing agent, issued separate title insurance policies to the parties involved in these three transactions.  Compl. at ¶¶ 75, 99 & 140.

It is not disputed that, before these closings:  (i) FCHG-IV owned the North Jersey Properties, and James and Cynthia Licata (the "Licatas") held legal title to FCHG-IV; and (ii) Lorraine Mocco had properly given FCCG the

---

[1] These facts are based on allegations in the Complaint and are assumed to be true for purposes of this motion only.  Chicago Title reserves its right to dispute any and all of them should any claims survive this motion.

Bernardsville and Sayreville Mortgages, and the Licatas owned FCCG.[2]  Compl. at

¶¶ 6-8.  Rather, the Moccos claim that at all times they held equitable title to

FCHG-IV and the Bernardsville and Sayreville Mortgages and that the Licatas

were merely acting as their nominees.  The Licatas, on the other hand, assert that

they are the true owners of FCHG-IV and the Bernardsville and Sayreville

Mortgages.  Compl. at ¶¶ 31, 32.  To resolve their dispute, the Moccos sued the

Licatas, as well virtually everyone involved in these three transactions, in the

matter styled, <u>Peter Mocco, et al. v. Licata, et al.</u>, Docket No. ESX-C-397-99,

consolidated under Docket No. ESX-C-280-98, Superior Court of New Jersey,

Essex County, Chancery Division ("the Mocco State Court Action").  Compl. at

¶ 29.  The Mocco State Court Action is scheduled to go to trial this year.

**B.      The Mocco State Court Action**

On three separate occasions, the Moccos have attempted to join

Chicago Title as a party in the Mocco State Court Action.  Each has failed.

**1.      Plaintiffs' First Amended and Supplemented Complaint**

Plaintiffs first sought to name Chicago Title as a defendant in the

Mocco State Court Action when they filed their First Amended and Supplemented

Complaint ("Amended Complaint") on March 7, 2007.  <u>See</u> March 7, 2007 Am. &

---

[2] The title record was clear as to FCHG-IV owning the North Jersey Properties and FCCG having been given the Bernardsville and Sayreville mortgages by Lorraine Mocco.

Supp. Compl., Exh. B to the Freijomil Cert.  The only claim in the Amended

Complaint naming Chicago Title was entitled "Quiet Title/Declaratory Judgment."

See Freijomil Cert. at Exh. B.  Recognizing that there was no substantive basis to

assert such a claim for "Quiet Title/Declaratory Judgment" against Chicago Title, a

title insurer, Plaintiffs agreed to dismiss Chicago Title without prejudice on May

24, 2007.  See Stip. of Dismissal attached as Exh. C to Freijomil Cert.

2.    **Plaintiffs' Second Amended and Supplemented Complaint**

On January 9, 2009, Plaintiffs filed a Second Amended and

Supplemented Complaint in the Consolidated Action (the "Second Amended

Complaint") again naming Chicago Title, repeating the same "Quiet

Title/Declaratory Judgment" claim.  See Second Am. and Supplemented Compl. at

Count XIX., Exh. D to Freijomil Cert.  This time, Plaintiffs refused to dismiss

Chicago Title, instead requiring Chicago Title to fully brief a motion to dismiss the

meritless claim.  See Notice of Motion, Exh. E to Freijomil Cert.  At oral

argument, however, the Mocco Parties had an epiphany and again agreed to

dismiss without prejudice their claim. See Stip. of Dismissal, Exh. F to Freijomil

Cert.

3.    **Plaintiffs' Proposed Third Amended and Supplemented
      Complaint**

Fresh off the denial of their summary judgment motion based on their

"nominee" argument in the Mocco State Court Action, on June 15, 2011, Plaintiffs

filed a motion to amend their Complaint to include Chicago Title for the third time (the "Proposed Third Amended Complaint"). See Proposed Third Amended Complaint, Exh. G to the Freijomil Cert. Despite Plaintiffs having had years since first naming Chicago Title as a defendant and obtaining extensive discovery from Chicago Title, the only factual allegation Plaintiffs could muster against Chicago Title was that it issued title insurance policies concerning the properties at issue. See id. at ¶¶ 94, 117.

In their Proposed Third Amended Complaint, Plaintiffs first restated their previously twice-dismissed "Quiet Title/Declaratory Judgment" claim in which they made no specific allegation of wrongdoing against Chicago Title. See Proposed Third Am. Compl. at Count XVIII. Plaintiffs also asserted a proposed Slander of Title claim (Count XV) against Chicago Title, literally only adding Chicago Title's name to the heading and the "Wherefore" clause. Id. at Count XV. Plaintiffs made no allegations as to Chicago Title in that count. See id. Finally, Plaintiffs attempted to craft a series of tort-based claims in an effort to shoehorn Chicago Title into the litigation, namely "Negligent Supervision" and "Conspiracy to Aid the Commission of a Tort" claims. Id. at Counts XX and XXI. These "claims" are essentially the same claims Plaintiffs seek to assert against Chicago Title in this action.

### 4. Denial of Plaintiffs' Motion to Assert Claims Against Chicago Title

Recognizing the utter frivolity of Plaintiffs' purported claims against Chicago Title, the State Court (Vichness, J.) denied Plaintiffs' motion to amend to add those claims in the Proposed Third Amended Complaint. See Order, Exh. H to the Freijomil Cert. While primarily basing its decision on delay, the State Court left no doubt as to the lack of merit to Plaintiffs' proposed claims against Chicago Title. The State Court specifically recognized the obvious: that the Plaintiffs could not recover against Chicago Title under title insurance policies issued to others and, as importantly, that Chicago Title owed no duty to Plaintiffs when it issued those policies insuring the interests of others:

> THE COURT: I understand that, but there's no way you're getting their title insurance because they issued a policy on property they didn't own.
>
> Look, I remember the way those deeds were signed. I understand all that and that all go to your argument about the wild deeds, about SWJ, even about the Proskauer firm.
>
> My question to you is much different. My question to you is assume the insured title that they shouldn't have insured, how does that inure to your client's interest?
>
> MR VARGO: Their failure to supervise and to insure their agents acting on their behalf for failure to make sure that his actions and their employees' actions didn't harm my client; it did.

THE COURT:  How does it harm your client, them issuing a title policy that your client isn't – can't possibly be the beneficiary of?  The policy isn't to your client.

MR. VARGO:  It's not the issue that it's – that my client would be the beneficiary.  It's one aspect of a larger scheme to try and take these properties from my client, and the more documentation and supporting evidence you have of ownership, the further support they have.

Securing the title insurance policy allowed the other participants to do certain things, and that's briefed in the papers.

THE COURT: You've been alleging that the other parties in this case entered into a conspiracy by the wild deeds by selling the property multiple times, by all of those things.  That's been alleged since your first amendment, ok.  That's been alleged for four years now.

MR. VARGO:  Okay.

THE COURT:  What it appears you're now saying is all of those things, what helped those things is Chicago Title gave them credibility by issuing a title policy.

MR. VARGO:  That's one aspect of it, yes, Your Honor, but the fact of the matter is they had an obligation to supervise their – their agent.

THE COURT:  To whom?  To whom did they owe an obligation?

MR. VARGO:  To the public.

THE COURT:  I – see, I – I don't know that the public paid the premium on those policies.

8

See Transcript of August 5, 2011 Motion ("Transcript") at 67:23-69:19, Exh. I to the Freijomil Cert (emphasis added).

## C.    The Instant Action

Despite this history, Plaintiffs again try to assert their bogus claims against Chicago Title on the very same basis as they sought to file the Proposed Third Amended Complaint.  Plaintiffs couch their claims as "Aiding a Civil Conspiracy Through Negligent Supervision" (Count IV) and "Aiding a Civil Conspiracy and the Commission of a Tort" (mislabeled as Count XXI), but merely allege that Chicago Title should somehow be found liable for having issued title insurance policies in connection with the FCHG-IV and Bernardsville and Sayreville Mortgages transactions.   See Compl. at Counts IV and XXI (V). Plaintiffs purport to support these meritless claims by alleging that Chicago Title's policy-issuing agent, Horizon, knew of the dispute between the Moccos and the Licatas before issuing those policies.  See Compl. at ¶ 147.  Then, Plaintiffs aver that Chicago Title owed them any duty to supervise Horizon (which presumably would have prevented Horizon from issuing the title insurance policies) and to inform Plaintiffs about the transactions.  See Compl. at ¶¶ 143-144.  In the end, however, Plaintiffs make no allegations whatsoever that Chicago Title had any relationship with them regarding these transactions.  See Compl. at in passim.

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a claim based upon a dispositive issue of law.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (noting that Rule 12(b)(6) streamlines litigation by dispensing with needless discovery and fact finding).  While Rule 8(a)(2) of the Federal Rules of Civil Procedure "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Iqbal, 129 S. Ct. at 1949 (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Id.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (citation and internal quotation marks omitted).  Although a court must accept as true all of the factual allegations contained in a complaint, that principle is inapplicable to legal conclusions.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 129 S. Ct. at 1950; US Land Res., LP v. JDI Realty LLC, et als., 2009 WL

2488316 at *3 (D.N.J. Aug. 12, 2009) (copy attached as Ex. J to Freijomil Cert.) ("While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations."). Thus, after Iqbal, "it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Finally, on a motion to dismiss, courts may consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." See Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004), cert. den., 543 U.S. 918 (2004). A document "forms the basis of a claim" when it is "'integral to or explicitly relied upon in the complaint.'" Id. (quoting Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). A court may consider litigations referenced in the complaint and take judicial notice of prior judicial opinions. Iacaponi v. New Amsterdam Cas. Co., 379 F.2d 311, 311-312 (3d Cir. 1967); Lum, 361 F.3d at 222 n.3.

Applying these standards, Plaintiffs' Complaint fails for the reasons set forth below.

## II.  PLAINTIFFS FAIL TO STATE CLAIMS AGAINST CHICAGO TITLE FOR ACTIONABLE UNDERLYING WRONGFUL ACTS

Plaintiffs purport to assert two "conspiracy" claims against Chicago Title; the first based on alleged "negligent supervision" of its policy-issuing agent, Horizon Title (Count IV), and the second based on a claimed commission of a "tort" (mislabeled as Count XXI).  However, an allegation of a conspiracy, by itself, is insufficient as it must be predicated on an actionable wrong.  See Weil v. Express Container Corp., et al., 360 N.J. Super. 599, 614 (App. Div. 2003) ("[T]he principal element of [a conspiracy] is to inflict a wrong against or injury upon another[.]") (internal citations omitted); Hammer v. Hair Sys., Inc., 2009 WL 1686820 at *5 (N.J. Super. Ct. App. Div. June 18, 2009) (copy attached as Exh. K to Freijomil Cert.) ("The basis of a civil conspiracy is 'not the unlawful agreement,' 'but the underlying wrong which, absent the conspiracy, would give a right of action.'") (internal citations omitted); Bello v. Lyndhurst Bd. of Educ., 344 N.J. Super. 187, 197 (App. Div. 2001) (dismissing conspiracy claim where the underlying cause of action fails); see also Judson v. Peoples Bank &Trust Co., 25 N.J. 17, 29 (1957) (requiring "the commission of a wrongful act").

Here, Plaintiffs fail to adequately allege either of their purported "conspiracy" claims for two separate and independent reasons.  First, they fail to allege facts to establish that Chicago Title owed any duty to Plaintiffs.  Second,

they fail to allege any actionable wrongful act committed by Chicago Title. Indeed, all it did was issue title insurance policies.

## A.    Plaintiffs Do Not Allege Any Duty

Because Plaintiffs have not and cannot allege that Chicago Title owed them any duty, their claims against Chicago Title must fail.    See Theobald v. Dolcimascola, 299 N.J. Super. 299, 304 (App. Div. 1997) ("Where there is no duty there is no liability."). It is for the Court to decide, as a threshold matter, whether any duty exists. See Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 529 (1988) (duty is to be decided by the Court as a matter of law); Zielinski v. Professional Appraisal Assocs., 326 N.J. Super. 219, 226 (App. Div. 1999) (whether any duty exists is a question of law for the court to decide); United Jersey Bank v. Kensey, 306 N.J. Super. 540, 551 (App. Div. 1997) (citing Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194 (1994)) (same); Johnson v. Usdin Louis Co., Inc., 248 N.J. Super. 525, 529 (App. Div. 1991) (same). As the State Court previously ruled in the Mocco State Court Action, Plaintiffs are unable to allege facts sufficient to establish that Chicago Title owed any duty to Plaintiffs See Transcript at 67:23-69:19 (failing to see any obligation owed by Chicago Title to Plaintiffs or the public, as Plaintiffs urged, commenting:  "I don't know that the public paid the premium on those policies").

### 1.    Negligent Supervision Claim

It is without dispute that "before recovery may be had [on a claim of negligent hiring or supervision], a duty must exist in law . . . ." Johnson, 248 N.J. Super. at 529.  Determining whether such a duty exists in the context of negligent supervision is as follows:

> The question of duty involves largely a matter of policy and fairness, Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583 (1962), "a weighing of the relationship of the parties, the nature of the risk, . . ., the public interest in the proposed solution," Kelly v. Gwinnell, 96 N.J. 538, 544 (1984), "and all of the surrounding circumstances." Renz v. Penn Cent. Corp., 87 N.J. 437, 461-63 (1981). The foreseeability essential to the creation of a legal duty in this case focuses on whether [employer] should have foreseen that its conduct unreasonably enhanced a hazard that would be injurious to those coming within the range of such a hazard.  Hill v. Yaskin, 75 N.J. 139, 144 (1977).

Johnson, 248 N.J. Super. at 529; see also id. at 528 ("The tort of negligent hiring or retaining an employee requires proof that the employer 'knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons.'") (citation omitted).  Importantly, under this analysis: "Foresight, not hindsight, is the standard by which one's duty of care is to be judged." See id. at 529 (quoting Hill, 75 N.J. at 144).

Here, Plaintiffs allege that Chicago Title supposedly had a "duty to supervise its agent Horizon" based on its "own rules applicable to policies such as the ones issued here, each of which exceeded the limits of Horizon's authority . . . ." See Compl. at ¶ 143. Plaintiffs make reference to Chicago Title "adopt[ing] rules and procedures for the oversight and supervision of its agent Horizon and its employees[,]" noting that the policies at issue were in excess of $1 million. See id. at ¶¶ 135-136. Plaintiffs further assert that Horizon and Cohn were "rogue agents." See id. at ¶ 142. Such conclusory allegations, however, even if true, fail to establish the basis needed to find a duty and, to the contrary, show that no such duty could be imposed.

As an initial matter, there is no allegation that Plaintiffs had any direct relationship with Chicago Title or even Horizon for that matter. Thus, the relationship vel non between the parties at issue weighs against finding a duty. In an act of desperation, Plaintiffs instead try to fashion a duty based on a claimed failure to police Horizon, an asserted "rogue" policy-issuing agent, with regard to Horizon writing title policies in excess of $1 million. Even assuming arguendo that Chicago Title had known about Horizon's practice of writing title policies in excess of $1 million and failed to supervise Horizon, such actions do not show how it would have been reasonably foreseeable at the time to Chicago Title that Horizon's policy-writing practices "unreasonably enhanced a hazard" that would

cause injury to <u>non</u>-insureds (as opposed to the insured or to Chicago Title itself). Indeed, here, that would have required Chicago Title to conclude that its agent's acts - Horizon's issuance of title insurance policies in excess of $1 million - somehow "unreasonably" enhanced acts of a third-party (<u>i.e.</u>, Chicago Title's insured) to cause injury to a fourth-party. Such a remote, speculative, and convoluted path certainly cannot be considered "reasonably foreseeable" under the circumstances. At best, any reasonably foreseeable harm stemming from Horizon's issuing policies in excess of its authority would be to <u>Chicago Title itself, since it would expose the title insurance company to potential liability beyond that which it authorized its agent to incur on its behalf.</u> That, however, provides no basis upon which an actionable claim can be asserted by Plaintiffs against Chicago Title.

Finally, consideration of the public interest mandates finding that no duty exists on the part of a title insurer such as Chicago Title to remote-parties like Plaintiffs. New Jersey has long recognized the <u>particular</u> nature of a <u>title insurer</u>, which "does not purport to act as anything more than an insurance company." <u>See Walker-Rogge, Inc. v. Chelsea Title & Guar. Co.</u>, 116 N.J. 517, 538 (1989) (citation omitted). Chicago Title, as a title insurer, "is providing not services, but a <u>policy of insurance</u>[,]" which title insurance policy "appropriately limits the rights and duties of the parties." <u>See id.</u> at 540 (emphasis added). Given this, not only

has the New Jersey Supreme Court limited a title insurer's duty <u>solely</u> to its insured as set forth in the title insurance policy, but has further held that a title insurer does not owe any non-contractual duties to its insured (much less to third-parties) unless voluntarily assumed by the title company. <u>See</u> <u>id</u>.

Further, there are sound policy reasons for not recognizing any "duty" by a title insurer to any party other than its insured under the title insurance policy. To hold otherwise would expose title insurers to potential liability to anyone purportedly adverse to the interests of the title company's insured and thereby exponentially increase the potential liability of the title insurer well beyond the limits of the title policy upon which its premium is based.

It is simply black-letter law that a title insurer's liability, if any, is to its insureds subject to the terms and conditions of the title policies issued to them. This is the proper allocation of liability in the title insurance context, and public policy dictates that it not be changed as Plaintiffs posit here. <u>See</u> <u>Johnson</u>, 248 N.J. Super. at 530-531 (finding that if a legal duty were found to exist, "that would mean that virtually all employers [whose employees work with dangerous products] would be exposed to liability" and that public policy precluded such a finding). Dismissing Plaintiffs' claims against Chicago Title does not prevent them from seeking their redress against the parties they allege harmed them (which

they are doing), it merely respects and follows the proper boundaries and limitations of title insurance law.

### 2.    Alleged Commission of a Tort Claim

Plaintiffs' second claim against Chicago Title (mistakenly identified as Count XXI) is based on an alleged "duty to, at the very least, make inquiries of the Moccos prior to aiding and abetting the fraudulent mortgages and attempted transfer of the FCHG IV real estate yet made no such inquiries." See Compl. at ¶ 148. Plaintiffs set forth no factual basis to support this legal conclusion and make no attempt to identify any relationship between Plaintiffs and Chicago Title in this matter (because there was none). Thus, as set forth above, Plaintiffs' claim against Chicago Title must be dismissed for failing to establish a duty.

To the extent Plaintiffs purport to base their claim in "fraud" and seek to impose liability upon Chicago Title liable failing to disclose information, the claim must fail because, again, Chicago Title owed no duty to Plaintiffs to disclose anything. A party will only be liable for its silence where a duty to disclose exists:

> "There are three general classes of transactions in which [such] a duty to disclose arises. The first involves fiduciary relationships such as principal and agent or attorney and client. The second embraces situations in which "'either one or each of the parties, in entering ... [the] transaction, expressly reposes ... a trust and confidence in the other ... or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence ... is necessarily implied.'" The third includes

> contracts or transactions which in their essential nature, are 'intrinsically fiduciary,' and 'necessarily call[ ] for perfect good faith and full disclosure, without regard to any particular intention of the parties.'"

United Jersey Bank v. Kensey, 306 N.J. Super. 540, 551 (App. Div. 1997) (citations omitted).

Each of these three categories presupposes some level of a relationship, or at least contact, between the alleged wrongdoer and the claimed victim, which Plaintiffs admit never occurred here. Here, there was no relationship or dealings between Chicago Title and Plaintiffs, so there is no basis to support a claim of a fiduciary relationship. See Alexander v. CIGNA Corp., 991 F. Supp. 427, 438 (D.N.J.), aff'd 172 F.3d 859 (3d Cir. 1998) ("fiduciary duties are not imposed in ordinary commercial business transactions"); see also Shogen v. Global Aggressive Growth Fund, Ltd., 2007 WL 1237829 at *17 (D.N.J. Apr. 26, 2007) (copy attached as Exh. L to Freijomil Cert.) (discussing Kensey exceptions and finding no fiduciary duty). Nor did Chicago Title encourage any reliance by Plaintiffs upon anything. Thus, Plaintiffs' "failure to disclose" claim fails as a matter of law.

## B.    Plaintiffs Fail to Assert any Actionable Wrong

As set forth above, Plaintiffs' conspiracy claims require that they allege more than just the existence of a conspiracy – they must allege an underlying wrongful act. See, supra, Weil, 360 N.J. Super. at 614; Hammer, 2009

WL 1686820 at *5; <u>Bello</u>, 344 N.J. Super. at 197; <u>see also</u> <u>Judson</u>, 25 N.J. at 29. That is, Plaintiffs must allege a conspiracy "to commit an unlawful act, or to commit a lawful act by unlawful means[.]" <u>See Weil</u>, 360 N.J. Super. at 614. The only affirmative acts Plaintiffs allege that Chicago Title committed were the issuance of title insurance policies to its insureds. <u>See</u> Compl. at ¶¶ 136-141 & 150.[3] A title insurance policy is a lawful indemnity contract authorized by statute. <u>See</u> <u>Sandler v. New Jersey Realty Title Ins. Co.</u>, 36 N.J. 471, 478-79 (1962) ("A title insurance policy is a contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to, or liens or encumbrances upon realty in which the insured has an interest."); N.J.S.A. 17:46B-1, <u>et</u> <u>seq</u>. (authorizing issuance of title insurance). Thus, the issuance of title policies to insureds can

---

[3] Plaintiffs make generic and unsubstantiated allegations of Chicago Title's involvement in the purported conspiracy by merely lumping it together as one supposed unit with other parties. Those allegations, however, are based on claims of fraud as purportedly perpetrated against Plaintiffs. <u>See</u> Compl. at ¶¶ 64, 75, 78, 84, 95, 98-99, & 111. Allegations making conclusory groupings of parties are insufficient. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); <u>Soto v. Quicken Loans, Inc.</u>, 2010 WL 5169024 at *4-*5 (D.N.J. Dec. 14, 2010) (dismissing fraud claim where: "Many of the allegations in the Amended Complaint refer to these 'defendants' collectively as a single unit, although it cannot be inferred from the complaint that they necessarily acted as such. As such, it is difficult to discern, for example, precisely what fraudulent conduct is alleged against which defendants, and specifically what conduct underlies each of Plaintiff's claims as to each defendant."), Ex. M to Freijomil Cert.

never be an unlawful act, and Plaintiffs fail to allege how Chicago Title could commit such a lawful act by "unlawful means." Without more, then, Plaintiffs' claims against Chicago Title must be dismissed. See Hammer, 2009 WL 1686820 at *5 (upholding dismissal of conspiracy claim where there was no underlying wrongful conduct).

### III.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE A CONSPIRACY

A civil conspiracy in New Jersey consists of "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means a principal element of which is to inflict a wrong against or injury upon another, together with an act that results in damage." Weil, 360 N.J. Super. at 614 (internal citations omitted). "A mere allegation that there is a conspiracy is a conclusion, not a fact. It must be substantiated by facts – factual evidence[.]" Amabile v. Lerner, 64 N.J. Super. 507, 514 (Ch. Div. 1960), aff'd, 74 N.J. Super. 443 (App. Div. 1962). Despite vague, ineffective assertions generically lumping Chicago Title together with others, Plaintiffs' allegations of a conspiracy are only as between Chicago Title and Horizon and/or its employee, David Cohn, with regard to issuing title policies. See Compl. at ¶¶134-136, 142-144, 147, & 149-150; see also supra note 3. Such conclusory allegations, however, insufficient to allege a conspiracy as a matter of law. See D'Arrigo v. South Jersey Hosp. System, Inc., 2006 WL 2795337 at *8 (N.J. Super Law. Div. Aug. 25, 2006)

(copy attached as Exh. N to the Freijomil Cert.) ("There can be no contract, combination or conspiracy by a corporation . . . with its own officers, agents or employees, who are performing their usual job of formulating and carrying out its managerial policy.").    Accordingly, Plaintiffs' two conspiracy claims against Chicago Title must be dismissed.

## IV.    ALTERNATIVELY, PLAINTIFFS' CLAIMS AGAINST CHICAGO TITLE FAIL FOR ADDITIONAL AND INDEPENDENT REASONS

### A.    Plaintiffs Fail to State a Claim for Civil Conspiracy Through Negligent Supervision

Plaintiffs attempt to fabricate from whole cloth a claim styled "Civil Conspiracy Through Negligent Supervision," which surely cannot exist for a number of reasons.   First, Plaintiffs fail to set forth any basis to support their assertion that Chicago Title conspired to negligently supervise it own policy-issuing agent, Horizon.   Chicago Title is unaware of any cause of action to "conspire" with one's self to "negligently supervise."   Second, Plaintiffs' assertion that Chicago Title conspired to commit an unintentional act, i.e., negligent supervision, does not support a claim of civil conspiracy, which requires an intentional act.   The "principal element" of a conspiracy is "an agreement between the parties to inflict a wrong against or injury upon another[.]"   See Weil, 360 N.J. Super. at 614 (internal citations omitted).   Finally, negligent supervision claims largely have been reserved for employer-employee (or parent-child) contexts in

which the allegedly negligently supervised party caused tortious bodily injury to a third-party.   Plaintiffs present no basis for apply such a cause of action in the commercial context involving a title insurer and a title agency contractually authorized to issue title insurance coverage where the alleged harm is economic damage (and not bodily injury).

### B.   Plaintiffs Fail to Allege Fraud with Specificity

Plaintiffs' second cause of action alleged against Chicago Title, a claimed civil conspiracy to a commit an undefined "tort," screams of purposeful ambiguity.   Plaintiffs do not specify exactly what it is that Chicago Title committed or conspired to commit, but rather make general references to a "fraud" and "fraudulent mortgages."   See Compl. at ¶¶ 147-148.   However, to establish common-law fraud, Plaintiffs must plead: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.   See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).   When "alleging fraud or mistake, a party must state with particularity, the circumstances constituting fraud or mistake." F.R.C.P. 9(b); Soto, 2010 WL 5169024 at *4-*5 (confirming that fraud claims must meet heightened pleading requirement).   Under Rule 9(b), a plaintiff alleging fraud must identify the "precise misconduct with which [the defendant is being]

charged" by alleging the "the date, time, and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Here, the pathetic attempt by Plaintiffs to generically lump Chicago Title together with other parties, rather than specify its alleged fraudulent actions, is little more than an effort to hide its failure to meet 9(b) specificity requirements. All that Plaintiffs specifically allege against Chicago Title here is that it's agent issued title insurance policies, which is itself not actionable fraud.  As such, Plaintiffs have failed to satisfy Rule 9(b) to sustain any claim for fraud.  See Soto, 2010 WL 5169024 at *4-*5 (dismissing complaint where parties referred to as single-unit violating R. 9(b)).  Accordingly, Plaintiffs' conspiracy claim to commit a "tort" should be dismissed.

## CONCLUSION

For the reasons stated above, Plaintiffs' claims against Chicago Title should be dismissed with prejudice.

Respectfully submitted,
RIKER,    DANZIG,    SCHERER,
HYLAND & PERRETTI LLP
Attorneys for Defendant Chicago Title
Insurance Company

By    /s/ Michael R. O'Donnell
         Michael R. O'Donnell

Date: April 27, 2012