NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PETER MOCCO, LORRAINE MOCCO, and FIRST CONNECTICUT HOLDING GROUP LLC, IV, | Hon. Dennis M. Cavanaugh |
|  | **OPINION** |
| Plaintiff, | Civil Action No. 12-CV-1458 (DMC)(JAD) |
| v. |  |
| AEGIS FRUMENTO and CHICAGO TITLE INSURANCE COMPANY, |  |
| Defendants. |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon separate Motions by Defendants Aegis Frumento ("Frumento") and Chicago Title Insurance Company ("CTIC") (collectively "Defendants") to Dismiss the Complaint filed by Plaintiffs Peter Mocco, Lorraine Mocco (together "the Moccos") and First Connecticut Holding Group, LLC, IV ("FCHG IV") (collectively with the Moccos "Plaintiffs"). (ECF No. 13, ECF No. 14). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that the Defendants' Motions to Dismiss are **granted with prejudice**.

I.   **BACKGROUND**[1]

This matter stems from a dispute in the ownership of certain real estate assets held by a

---

[1] The facts set-forth in this Opinion are taken from the Complaint. (Mar. 8. 2012, ECF No. 1, Ex. A).

1

holding company, FCHG IV. Specifically, Plaintiffs have alleged that Defendants engaged in misconduct by assisting in the transfer of title of certain real estate assets held by FCHG IV, to parties other than the Moccos.

In 1996, the Moccos were both debtors-in-possession in reorganizations, pursuant to Chapter 11 of the United States Bankruptcy Code. Peter Mocco and James Licata[2] entered into a joint venture agreement dated January 28, 1998, to carry out a deal where James Licata would purchase the Plaintiffs' properties and hold title subject to the Plaintiffs' ability to repurchase the properties. Several holding companies were created for holding the applicable properties, including FCHG IV. FCHG IV rented a portfolio of multi-dwellings in Jersey City and North Bergen, New Jersey, which FCHG IV allegedly still owns.

The instant action is related to five cases consolidated in the Superior Court of New Jersey that are currently being litigated in the state courts, which date back to October 1998 (the "State Actions"). The crux of the disputes in the State Actions, as well as in the Complaint here, is ownership of certain New Jersey LLCs, which included Defendants' participation in assisting James Licata in the transfer of certain pieces of real estate. In the pending State Actions, the Moccos have attempted to amend their claims on multiple occasions to add Defendants as parties, but their motions have been denied.

In 2002, Licata filed over twenty-five bankruptcy petitions. Fifteen of the petitions were voluntarily dismissed, while five of the petitions (listed in Compl. ¶43 as FCHG II, III, X, XI, and XII) were transferred to the Bankruptcy Court for the District of Vermont. FCHG IV was not a party

---

[2]James Licata is not a party to this action. For the purposes of this Background, Licata acted as an intermediary in the real estate transactions.

to any of the transferred five petitions.. The five bankruptcy petitions were subsequently dismissed by the Honorable Colleen A. Brown, U.S.B.J.. (See In re: First Connecticut Consulting Group, Inc., 2004 WL 1676211 (Bankr. D. Vt. 2004)). The dismissal of these petitions was affirmed by the District Court of Vermont in 2006 and the Second Circuit in 2007. (See In re: First Connecticut Consulting Group, Inc., 340 B.R. 210 (2006); In re: First Connecticut Consulting Group, Inc., 254 Fed.Appx. 64, 2007 WL 3498199 (C.A.2 (Vt.))). During the pendency of the bankruptcy appeals, Licata received permission from the Bankruptcy Court to sell certain assets, including those assets held by FCHG IV. Plaintiffs objected to the sale and requested that language be included in the sale that the FCHG IV sale be subject to the ownership dispute between Licata and Plaintiffs. The Bankruptcy Court included this language in the November 16, 2005, order. (See ECF No. 14, Ex. G). On April 9, 2012, the court in the State Actions ruled that the holding of the Bankruptcy Court had "no collateral estoppel, issue preclusion, res judicata, or other preclusive effect in this action." Thus, ownership of FCHG IV remains an unresolved issue and continues to be litigated in the State Actions.

This instant action was removed to this Court from the Superior Court of Essex County (Docket Number: ESX-L-00641-12) on March 8, 2012. In the Complaint, Plaintiffs assert five causes of action against Defendants: 1) Aiding and Abetting Trespass to Land; 2) Conspiracy to Slander Title; 3) Conspiracy to Perpetrate the "Wild Deed Scam;" 4) Aiding a Conspiracy through Negligent Supervision; and 5) Aiding a Civil Conspiracy and the Commission of a Tort. CTIC filed a Motion to Dismiss the Complaint and Moving Brief ("CTIC Mov. Br.") on April 27, 2012. (ECF No. 13). Plaintiffs filed their Opposition Brief ("Pl. 1st Opp'n Br.") on May 30, 2012. (ECF No. 18). CTIC filed its Reply ("CTIC Rep." on June 18, 2012. (ECF No. 24). Additionally, Frumento filed a Motion

3

to Dismiss the Complaint and Moving Brief ("Fr. Mov. Br.") on April 27, 2012. (ECF No. 14). Plaintiffs filed an Opposition Brief ("Pl. 2nd Opp'n. Br.") on May 30, 2012. (ECF No. 17). Frumento filed his Reply ("Fr. Rep.") on June 18, 2012. (ECF No. 23). Both motions are now before this Court.

II.  **STANDARD OF REVIEW**

   A.  **FED. R. CIV. P. 12(b)(6)**

When deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion, a court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

While under the liberal notice pleading standard a plaintiff is not required to plead facts sufficient to prove its case, there still must be an underlying claim for relief before the court. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, as recognized in In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300 (3d Cir. 2000) . Moreover, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). A pleading that offers labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

4

In Twombly, the Supreme Court established new language for interpreting the pleading standard when it held that a plaintiff was required to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. The "[f]actual allegations [of the complaint] must be enough to raise a right to relief above the speculative level." Id. at 555. Nonetheless, the Supreme Court specified that there is no heightened standard of fact pleading or requirement to plead specifics. Id. at 570. The Supreme Court explains:

> To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 129 S. Ct. 1937 (U.S. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57, 570 (2007).

**III.   DISCUSSION**

Frumento and CTIC have each moved to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). In the Complaint, Plaintiffs assert five claims against Defendants: 1) Aiding and Abetting Trespass to Land; 2) Conspiracy to Slander Title; and 3) Conspiracy to Perpetrate the "Wild Deed Scam;" 4) Aiding a Conspiracy through Negligent Supervision; and 5) Aiding a Civil Conspiracy and the Commission of a Tort. (Compl. ¶¶ 112-151). Frumento argues that Plaintiffs have brought this action in an effort to circumvent New Jersey's entire controversy doctrine ("ECD"). (Fr. Mov. Br. 17). Although CTIC has not made this argument in its submissions, the Court will evaluate both Motions to Dismiss

under an ECD analysis, since both Motions are based on the same set of facts.

"For over sixty years, it has been established in New Jersey that the entire controversy doctrine requires the mandatory joinder of all claims to a single transaction." Oliver v. Ambrose, 705 A.2d 742, 746 (1998). "To the extent possible[,] courts must determine an entire controversy in a single judicial proceeding." Cogdell by Cogdell v. Hosp. Ctr. at Orange, 560 A.2d 1169, 1178 (1989). "The doctrine has become such a fundamental aspect of judicial administration, it has achieved constitutional confirmation. Article 6, section 2, paragraph 4 of the 1947 Constitution states:

> Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief should be granted in any cause so that all matters in controversy between the parties may be completely determined."
> Id. at 15.

"Fragmented and multiple litigation takes its toll on not only the parties but the judicial institution and the public." Id. at 23. "The applicability of the entire controversy doctrine chiefly turns on whether the separately-asserted claims "arise from related facts or the same transaction or series of transactions." Archbrook Laguna, LLC v. Marsh, 997 A.2d 1035, 1039 (N.J. Super Ct. App. Div. 2010) (quoting DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995)).

Frumento argues that the subject of this lawsuit is the exact same subject as that in the bankruptcy actions and State Actions. (Fr. Mov. Br. 18). Frumento also points out that Plaintiffs' attempts to amend their claims in the pending State Actions to include Frumento and CTIC as defendants were denied by the Hon. Paul J. Vichness, J.S.C. (Fr. Mov. Br. 9 (See Ex. H to the LaSala Decl. at T71:13-16)). The trial court denied the motion to amend because it believed that Plaintiffs possessed evidence indicating the existence of Frumento and CTIC as

6

potential parties in this action more that a year before Plaintiffs attempted to name them as defendants, and thus it was too late to allow Frumento and CTIC to be added as doing so would prejudice proposed defendants. (Ex H, T57:23-58:11). Curiously, Plaintiffs did not appeal the trial court's decision, and instead, filed this current motion.

The Appellate Division, in Fisher v. Yates, 637 A.2d 546 (N.J. Super. Ct. App. Div. 1994), was faced with a similar situation. The plaintiff in Fisher attempted to amend its claim in a second lawsuit against the defendant. The trial court dismissed the second lawsuit under the ECD. The Appellate Division affirmed the trial court's dismissal because the claims were known to the plaintiff and could have been litigated in the first lawsuit.

Plaintiffs do not disagree that this action stems from the same facts and transactions as the currently pending State Actions. (Pl. 2nd Opp'n. Br. 3). Instead, Plaintiffs argue that since the State Actions have not yet been decided, this action is simultaneous rather than successive to that action. (Pl. 2nd Opp'n. Br. 14). Plaintiffs contend that the distinction between "simultaneous" and "successive" is significant for entire controversy doctrine purposes, because the entire controversy doctrine does not prohibit simultaneous actions– even where the two actions involve the same core set of facts. Kaselaan & D'Angelo Acco., Inc., v. Soffian, 675 A.2d 705, 708-709 (N.J. Super. Ct. 1996)..However, Plaintiffs have overlooked the Archbrook case, which affirmed the dismissal of a second action based on the entire controversy doctrine even though the second action was not a "successive action" but instead was filed while the original action "was still pending." Archbrook Laguna, LLC v. Marsh, 997 A.2d 1035, 1042 (N.J. Super. Ct. App. Div. 2010). In that case, plaintiff argued that "the entire controversy doctrine does not apply when the other suit remains pending." Id. at 1039. Pursuant to New Jersey law, a second lawsuit, related to

one currently pending, that meets the conditions for application of the entire controversy doctrine, should be dismissed. Id. at 1042.

New Jersey has adopted and routinely applied the ECD in order to limit piecemeal litigation of identical facts, which wastes courts' limited resources and prejudices parties late in the litigation process. Allowing the claims to now proceed would stand in direct contravention of the ECD. Accordingly, Plaintiffs' attempts to circumvent the ECD and attain another bite at the apple are hereby denied and the claims against the Defendants are dismissed.

## IV. CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' Motions to Dismiss are **granted with prejudice**. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Nov. 29, 2012

Orig.: Clerk
cc: Counsel of Record
The Honorable Joseph A. Dickson, U.S.M.J.
File