**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER MOCCO, LORRAINE MOCCO AND FIRST CONNECTICUT HOLDING GROUP LLC, IV,** | **Civil Action No. 12-1458 (ES) (JAD)** |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| **AEGIS FRUMENTO AND CHICAGO TITLE INSURANCE COMPANY,** | |
| Defendants. | |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendants Aegis Frumento and Chicago Title Insurance Company's motions to dismiss pursuant to the entire controversy doctrine. (ECF Nos. 65, 71). The Hon. Esther Salas, U.S.D.J. referred Defendants' motions to this Court for a Report and Recommendation. The Court conducted oral argument on Defendants' motions on June 4, 2015. Upon careful consideration of the parties' submissions and arguments, and for the reasons stated below, it is the recommendation of this Court that the District Court stay or administratively terminate this case pending resolution of the related matters currently pending in the New Jersey Superior Court. Once the those related matters have concluded, the District Court should dismiss

this case with prejudice as a sanction for Plaintiffs' previous violation of New Jersey Court Rule 4:5-1(b)(2).[1]

## I.   BACKGROUND

The United States Court of Appeals' April 24, 2014 Opinion in Mocco v. Frumento, 564 F. App'x 668 (3d Cir. 2014), contains a succinct explanation of the pertinent factual background of this case, and the Court incorporates the following information from that Opinion:

> This case stems from a protracted dispute concerning the ownership of certain real estate assets. According to the Moccos and FCHG IV, lawyer Aegis Frumento and Chicago Title Insurance Company ("Chicago Title") engaged in misconduct by assisting in the transfer of title to those assets from FCHG IV to third parties. The present lawsuit is just one front in a war dating back to 1998 between the Moccos and their former business associate, James Licata, over the ownership of those and other assets. Several other lawsuits (the "Consolidated Cases") involving the Moccos and Licata were earlier filed and consolidated in the Superior Court of New Jersey.
>
> In June 2011, the Moccos filed a motion for leave to amend their claims in the Consolidated Cases to add Frumento and Chicago Title as defendants. That attempt was the first time that the Moccos sought to add Frumento as a defendant, although they previously had twice added and twice dismissed Chicago Title as part of a quiet-title claim. At an in-person hearing on the motion to amend, the state court denied the motion primarily on the basis of delay, reasoning that, "at the very least, [the Moccos] had a year" to obtain "the basic information that would give rise to at least [their] theory of liability" and that "bring[ing] in new parties and apply[ing] new theories on litigation that started back in 1998" would further postpone an already-delayed trial.[2]

---

[1] The Hon. Esther Salas, U.S.D.J. has also referred Plaintiffs' motion for leave to file an amended pleading, (ECF No. 60), and Defendants' motions to dismiss on other (i.e., non-entire controversy doctrine) grounds, (ECF Nos. 68 and 74), to this Court. As noted below, and based on this Court's determination regarding the impact of the entire controversy doctrine, this Court recommends that the District Court **DENY** these motions as moot.

[2] The record for this matter indicates that the related cases pending in the Superior Court of New Jersey (the "State Court Matters") did, in fact, proceed to a four-month long bench trial, following which the Hon. James S. Rothschild, J.S.C. issued a 216 page Trial Court Opinion, dated June 2, 2015. (See ECF No. 87). For the purposes of clarity, the Court notes that the Superior Court

> In January 2012, the Moccos and FCHG IV filed the present suit against Frumento and Chicago Title in the Superior Court of New Jersey, asserting civil-conspiracy and aiding-and-abetting claims. The defendants removed the action to federal court in March 2012. Frumento and Chicago Title filed separate motions to dismiss for failure to state a claim, with Frumento arguing that the [Entire Controversy Doctrine ("ECD")] bars this action and Chicago Title noting its joinder in that argument. The District Court granted the motions to dismiss on ECD grounds.

Id. at 669-70 (internal citations omitted).

The Court of Appeals determined that "the District Court did not distinguish between claims-joinder ECD and party-joinder ECD in its memorandum opinion", and that, in fact, certain aspects of the District Court's analysis "suggest that the court actually applied a claims-joinder analysis instead of a party-joinder one." Id. at 671. For instance, the Court of Appeals took note that the District Court's decision "lack[ed] any findings regarding whether there had been a failure to timely identify Frumento and Chicago Title in the state court proceeding, whether any failure was inexcusable, and whether such a failure caused Frumento and Chicago Title substantial prejudice, which are all required considerations under Rule 4:5-1(b)(2) before a court may impose dismissal as a sanction." Id. The Court of Appeals also found it significant that the District Court "made no mention of the discretionary nature of sanctions for a violation of party-joinder ECD, failing to consider at all whether lesser sanctions were available before dismissing the complaint." Id. The Court of Appeals therefore vacated the District Court's dismissal and remanded the case "with instructions that the District Court apply a party-joinder ECD analysis when reviewing the sufficiency of the Complaint." Id.

---

previously entered a trifurcation order in the State Court Matters and that this trial/opinion pertained only to the first "phase" of those proceedings. (Tr. of June 4, 2015 Oral Arg. at 20:1-21:5, ECF No. 91).

By Orders dated May 2, 2014, the Hon. Esther Salas, U.S.D.J. granted Defendants leave to file renewed motions to dismiss in light of the Court of Appeals' decision. (ECF Nos. 45, 46). Defendants filed their renewed motions seeking dismissal pursuant to the ECD on May 23, 2014. (ECF Nos. 50, 51). On June 5, 2014, this Court entered an Order administratively terminating those motions and setting a briefing / filing schedule for resubmission of the ECD motions, as well as for briefing / re-filing Plaintiffs' motion for leave to amend and for briefing / filing Defendants' separate, anticipated motions to dismiss for failure to state a claim. (ECF No. 56). In compliance with that Order, Defendants filed their fully-briefed motions to dismiss on ECD grounds on August 27, 2014. (ECF Nos. 65, 71).[3] This Court scheduled oral argument on Defendants' ECD motions for June 4, 2015. On the eve of that argument, Defendant Chicago Title Company filed a letter advising that, "[f]ollowing a four-month bench trial [in the State Court Matters], the Honorable James S. Rothschild [of the New Jersey Superior Court] issued a June 2, 2015 Trial Court Opinion." (ECF No. 87). Chicago Title also attached a copy of that Trial Court Opinion, which exceeded 200 pages in length, to its letter. (Id.). Following oral argument, and at this Court's direction, the parties submitted supplemental letter briefing regarding the legal impact of Judge Rothschild's June 2, 2015 Trial Court Opinion (particularly with regard to whether the Court should stay this matter pending resolution of any appeals in the State Court Matters). (ECF Nos. 88-90). The parties have not provided any further updates regarding the status of the State Court Matters since that time.

---

[3] On the same date, and also in compliance with this Court's June 5, 2014 Order, Plaintiffs filed their fully briefed motion for leave to amend, (ECF Nos. 60-64), and Defendants filed their fully briefed motions to dismiss for failure to state a claim. (ECF Nos. 68-70; 74-76).

## II.   DISCUSSION

### A.   The Impact of New Jersey Court Rule 4:5-1(b)(2)

Pursuant to the Court of Appeals' instructions, this Court must determine whether the requirements imposed under New Jersey Court Rule 4:5-1(b)(2) might operate to bar Plaintiffs' claims in this case. That Rule, together with New Jersey Court Rule 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims . . .") dictates the parameters of New Jersey's ECD. See 700 Highway 33 LLC v. Pollio, 23 A.3d 446, 449-450 (N.J Super. Ct. App. Div. 2011) (noting that "[t]he entire controversy doctrine refers to [the New Jersey] Supreme Court's 'approach to joinder of claims and parties' that has 'evolved through a series of decisions' and rule amendments" and including both Rule 4:5-1(b)(2) and Rule 4:30A in its discussion of the ECD) (citations omitted). This Court need not and will not chronicle the full history of that doctrine here. Indeed, the New Jersey Supreme Court, the ultimate authority on the interpretation of New Jersey law, discussed the relevant portions of the evolution of the ECD in its opinion in Kent Motor Cars, Inc. v. Reynolds and Reynolds, Co., 25 A.3d 1027, 1035-37 (N.J. 2011). As the New Jersey Supreme Court observed, "[o]riginally a claim preclusion rule, over time, the [ECD] evolved to require joinder of parties as well, and culminated in the 1990 adoption of Rule 4:30A. In its first formulation, Rule 4:30A was broad, requiring joinder of claims and parties and imposing preclusion as a penalty to ensure compliance with that mandate." Id. at 1036 (emphasis added). In the years following that amendment, the New Jersey Supreme Court interpreted the ECD expansively, drawing scholarly criticism and prompting the court to scale the doctrine back somewhat via two amendments to the New Jersey Court Rules: "First, Rule 4:30A was amended to limit its scope to mandatory joinder of claims. Second, Rule 4:5-1(b)(2) was adopted to address joinder of parties." Id. In its opinion in Tutta

Italia, Inc. v. Dir., Div. of Taxation, Art & San, LLC, No. A-0460-12T1, 2014 WL 2560611, at

*6-7 (N.J. Super. Ct. App. Div., June 9, 2014), the New Jersey Superior Court, Appellate Division

described the significance of the 1998 amendments:

> The comment to Rule 4:30A clearly explains that the 1998
> amendment of the rules "eliminated mandatory party joinder under
> the entire controversy doctrine," because of "both practical and
> conceptual difficulties in the implementation of a party-preclusion
> rule and too many perceived instances of injustice." Pressler &
> Verniero, Current N.J. Court Rules, comment 1 on R. 4:30A (2014).
> Therefore, after the rule amendment, "preclusion of a successive
> action against a person not a party to the first action has been
> abrogated except in special situations involving both inexcusable
> conduct . . and substantial prejudice to the non-party resulting from
> omission from the first suit." Id.
>
> Now that the mandatory party joinder requirement has been
> abolished, it has "been replaced by clarification of the parties'
> disclosure obligations and of the range of appropriate court
> responses to failure of compliances therewith." Id.

(citations in original). Those disclosure obligations are set forth in New Jersey Court Rule 4:5-

1(b)(2). "Taken together, both Rule 4:30A and Rule 4:5–1(b)(2) advance the same underlying

purposes. As it relates to claims and to parties, they express a strong preference for achieving

fairness and economy by avoiding piecemeal or duplicative litigation." Kent Motor Cars, Inc., 25

A.3d at 1037.

New Jersey Court Rule 4:5-1(b)(2), which governs actions pending in the New Jersey

Superior Court, requires each party to include, with its first pleading, a certification disclosing "the

names of any non-party who should be joined in the action . . . because of potential liability to any

party on the basis of the same transactional facts." Moreover, parties "have a continuing obligation

during the course of the litigation to file and serve on all other parties and with the court an

amended certification if there is a change in the facts stated in the original certification." N.J. Ct.

R. 4:5-1(b)(2); Potomac Ins. Co. of Illinois ex rel. OneBeacon Ins. Co. v. Pennsylvania Mfrs. Ass'n

Ins. Co., 41 A.3d 586, 599 (N.J. Super. Ct. App. Div. 2012), aff'd, 73 A.3d 465 (N.J. 2013)

(citations omitted).  The Rule further provides that "[i]f a party fails to comply with its obligations

under this rule, the court may impose an appropriate sanction including dismissal of a successive

action against a party whose existence was not disclosed", but clarifies that "[a] successive action

shall not, however, be dismissed for failure of compliance with this rule unless the failure of

compliance was inexcusable and the right of the undisclosed party to defend the successive action

has been substantially prejudiced by not having been identified in the prior action."  N.J. Ct. R.

4:5-2(b); Santander Bank, N.A. v. Friedman, Schuman, Appelbaum, Nemeroff & McCaffery, P.C.,

No. CIV. 14-413 (JBS), 2014 WL 1621792, at *3 (D.N.J. Apr. 17, 2014) ("[f]ailure to comply

with the disclosure obligations of New Jersey Court Rule 4:5-1(b)(2) may . . . result in the

dismissal of a successive action against an undisclosed party" or the imposition of other sanctions

for noncompliance).

Taking the various provisions of New Jersey Court Rule 4:5-1(b)(2) together, a court may

only dismiss a case for violation of that Rule's disclosure requirements (i.e., the relief Defendants

seek here) if it finds that: "(1) the suit is a 'successive action'; (2) the plaintiff's failure to disclose

the existence of other potentially liable parties in the earlier litigation was 'inexcusable'; and (3)

the undisclosed parties' right to defend the successive action was 'substantially prejudiced' by their

omission."  Ricketti v. Barry, 775 F.3d 611, 615 (3d Cir. 2015) (citing Kent Motor Cars, Inc., 25

A.3d at 1038.  If, however, a court finds that a party has violated New Jersey Court Rule 4:5-

1(b)(2), but that the circumstances of that conduct do not satisfy the aforementioned, necessary

elements so as to justify dismissal, the court may remedy the violation using other appropriate

sanctions.  See Kent Motor Cars, Inc., 25 A.3d at 1037 ("Although the Rule specifies dismissal

and imposition of litigation costs as two enforcement mechanisms, they are not the only sanctions

available to the court.  Rather, the clear language also broadly authorizes the court to impose an appropriate sanction."); id. at 1041 (after recognizing a violation of New Jersey Court Rule 4:5-1(b)(2), but declining to find the level of "substantial prejudice" necessary to support dismissal under that rule, the New Jersey Supreme Court wrote: "there is a wide array of sanctions available to the trial court to address any injustice.  The trial court should not hesitate to impose any and all sanctions it concludes are needed to ensure that a just remedy is achieved between these parties."); Schneider v. United States, No. 06-3200 (JBS), 2008 WL 408420, at *3, n. 4 (D.N.J. Feb. 13, 2008) ("In the absence of substantial prejudice, suitable sanctions for noncompliance with Rule 4:5-1(b)(2) include "monetary sanctions and/or counsel fees later incurred that would have been avoidable by disclosure.") (internal citations omitted).

In light of the foregoing, in resolving Defendants' motions, the Court must first determine whether Plaintiffs violated New Jersey Court Rule 4:5-1(b)(2) by failing to properly identify Defendants in the State Court Matters.  If the Court finds that Plaintiffs have committed such a violation, the Court must then determine whether the circumstances of their failure merit dismissal under the plain language of the Rule and the relevant case law, or if some other, lesser sanction would be appropriate.

**B.**    **Plaintiffs Violated New Jersey Court Rule 4:5-1(b)(2)**

As an initial matter, it is undisputed that Plaintiffs never updated their Rule 4:5-1(b)(2) disclosure in the State Court Matters to identify Defendants Frumento and Chicago Title. Plaintiffs' counsel expressly acknowledged this fact during the June 4, 2015 oral argument in this matter.  (Tr. of June 4, 2015 Argument at 15:10-16:6).  Plaintiffs instead argue, without citation, that they complied with their disclosure obligations under the Rule by moving to amend their pleading to add Frumento and Chicago Title as defendants.  (Pl. Br. in Opp. to Frumento Motion

8

at 22-23, ECF No. 66).[4]  In determining whether Plaintiffs' modified effort at disclosure was adequate under Rule 4:5-1(b)(2), the Court examines that effort in light of the purpose of the Rule.

Rule 4:5-1(b)(2) disclosures are intended to permit the court to make informed determinations regarding the joinder of interested parties so as to avoid the prospect of piecemeal or duplicative litigation.  Kent Motor Cars, Inc., 25 A.3d at 1037 ("Rule 4:5-1(b)(2) requires that names of potentially liable or relevant parties be disclosed to the court, leaving to it the decision about whether to join them or not.").  There is no question that a timely motion seeking leave to add parties and claims via amendment would likely convey even more information that that required under the Rule, thereby serving the purpose of the Rule's disclosure requirement.  In the wake of filing an appropriate motion for leave to amend providing such information, a party's failure to file a separate, updated Rule 4:5-1(b)(2) disclosure identifying the same potential parties would be nothing more than a technical oversight with no impact on the litigation, and imposing sanctions in such a situation would be to elevate form over substance.  This Court will therefore assume, without deciding, that a motion to amend can potentially satisfy a party's obligations under New Jersey Court Rule 4:5-1(b)(2).

The Court must now turn to the timing of Plaintiffs' proposed amendment to determine whether it comported with the purpose of the Rule.  While Defendants address Plaintiffs' alleged delay in arguing that Plaintiffs' failure to comply with Rule 4:5-1(b)(2) was "inexcusable", (Frumento Br. at 19-22, ECF No. 65-1; Chicago Title Br. at 35-37, ECF No. 71-1), their arguments assume that Plaintiffs violated the Rule notwithstanding their efforts to amend to add Defendants

---

[4] In opposing Defendant Chicago Title's motion to dismiss, Plaintiffs incorporate by reference ECD arguments made in opposition to Defendant Frumento's motion, (Pl. Br. in Opp. to Chicago Title Motion at 22, ECF No. 72), while making certain additional arguments specific to Chicago Title's position.  (Id. at 23-29).  For the purposes of clarity, the Court will refer to Plaintiff's opposition to Defendant Frumento's motion when addressing such overlapping arguments.

Frumento and Chicago Title as parties in the State Court Matters, vaulting over the threshold issue in the analysis. Of course, if Plaintiffs' proposed amendment satisfied their disclosure obligations under Rule 4:5-1(b)(2), that is the end of the analysis and the Court must deny Defendants' motions. The Court finds that the timing of Plaintiffs' motion for leave to amend is critical to that determination. Plaintiffs take a different position regarding the importance of the timing of their proposed amendment, arguing that "[t]he test is not whether plaintiffs 'inexcusably delayed' in complying with the disclosure rule but rather, [Defendants] must prove that plaintiffs' 'failure of compliance was inexcusable.'" (Pl. Br. in Opp. to Frumento Motion at 23-24, ECF No. 66) (emphasis in original). Plaintiffs therefore suggest that Rule 4:5-1(b)(2) has no timing component, and that an updated disclosure, regardless of when it is made, is all that the Rule requires. In support of their argument, Plaintiffs cite to the Appellate Division's opinion in Jiorle v. Maenza, No. A-5420-11T1, 2013 WL 5879507 (N.J. Super. Ct. App. Div. Nov. 4, 2013). The Court finds that the Jiorle case actually cuts directly against Plaintiffs' position here.

In Jiorle, the plaintiff deposed Phillip Maenza (at the time a non-party fact witness) on February 7, 2006. Id. at *1. Just weeks later, on March 14, 2006, the plaintiff filed a supplemental Rule 4:5-1(b)(2) certification identifying Maenza as a person who may be subject to joinder (based on his deposition testimony). Id. The plaintiff also stated, in the same certification, that while he did not intend to move to join Maenza in the case, he reserved the right to file a separate action against him. Id. "Neither the court nor any party in the [original] action sought to join [Maenza] in the litigation", id., which the court tried to judgment in May and June of 2006. Id. The plaintiff then filed a separate suit against Maenza, and the Superior Court entered summary judgment in favor of the defendant, finding that "plaintiff violated the ECD and 'R. 4:5-1.'" Id. On appeal,

when considering the propriety of the trial court's Rule 4:5-1 dismissal, the Appellate Division

wrote:

> Here, dismissal of plaintiff's complaint was improper because
> plaintiff complied with the continuing obligation to amend his
> original *Rule* 4:5–1(b)(2) certification. It is undisputed that within
> weeks of deposing defendant, plaintiff filed the required amended
> certification. Defendant argues, however, that the filing was
> untimely, since plaintiff knew the essential facts supporting his
> claim of legal malpractice before he deposed Maenza.
>
> In order to accept defendant's argument as justification for the
> dismissal of plaintiff's complaint, we would need to conclude that
> plaintiff was so tardy that the filed supplemental certification was
> the equivalent of non-compliance. That is so because, pursuant to
> *Rule* 4:5–1(b)(2), dismissal was only appropriate if there were a
> "*failure of compliance*" that was "inexcusable" and "substantially
> prejudiced" defendant. In our minds, it is not at all clear that
> plaintiff had sufficient information before the deposition upon
> which to form a good-faith belief that he had a potential cause of
> action against defendant. And, we certainly cannot conclude that
> plaintiff failed to comply.

Id. at *3 (citations omitted) (emphasis in original). This language confirms the Appellate

Division's understanding that a supplemental Rule 4:5-1 disclosure can be "so tardy that [it

becomes] the equivalent of non-compliance." Id. Indeed, if, as Plaintiffs suggest, the timing of a

supplemental disclosure is immaterial, the Appellate Division would have simply said so and

ended its inquiry, rather than analyzing whether the disclosure in question was, in fact,

unreasonably delayed when determining whether Mr. Jiorle had complied with Rule 4:5-1(b)(2).

Id.

The factual situation at issue in Jiorle also serves as a helpful basis of comparison for this

case. First, unlike in Jiorle, in which the Appellate Division determined that the plaintiff updated

his Rule 4:5-1(b)(2) disclosure just weeks after obtaining information that provided a basis for

doing so, id., the New Jersey Superior Court, which has presided over the State Court Matters for

years and is therefore well-acquainted with the factual and procedural circumstances at issue there, determined that Plaintiffs obtained information (through deposition testimony and otherwise) sufficient to serve as a basis for their claims against Defendants Frumento and Chicago Title at least a year before moving to add them as parties. (July 11, 2014 Cert. of Bruce D. Vargo, Ex. A at 57:6-59:22, 69:1-70:15, ECF No. 66-1). Moreover, unlike in Jiorle, where the plaintiff timely filed a supplemental Rule 4:5-1 disclosure and the trial court nevertheless declined to sua sponte order joinder of the persons identified therein, 2013 WL 5879507 at *1, the judge in the State Court Matters denied Plaintiffs' motion to add Frumento and Chicago Title as defendants in light of Plaintiffs' delay in seeking such relief and the fact that, in light of that delay, Plaintiffs sought to add new parties on what the judge perceived to be the eve of trial. (July 11, 2014 Cert. of Bruce D. Vargo, Ex. A at 70:4-71:16, ECF No. 66-1). In short, there is a significant, fundamental difference between a situation in which a court receives a timely Rule 4:5-1(b)(2) supplement and simply declines to order joinder and one in which a court finds that joinder would be inappropriate given the plaintiffs' delay in raising the issue and the detrimental effect (based on that delay) that joinder would have on the existing proceedings. In the former, the court is able to make an informed decision and manage its docket accordingly. In the latter, the tardy litigant, through its delay, essentially forces the court's hand, in that the court must deny joinder in fairness to other litigants. In that latter situation, the tardy supplemental disclosure utterly fails to serve its intended purpose and is therefore "the equivalent of non-compliance." Jiorle, 2013 WL 5879507 at *3.

By Plaintiffs' interpretation of Rule 4:5-1(b)(2), taken to the extreme, a litigant would be able to fully discharge its obligations under the Rule by submitting an updated disclosure identifying additional parties for joinder mere moments before a jury returned its verdict or a court entered its judgment. Such conduct would defeat the purpose of the Rule. Where, as here, a party's

delay in updating its disclosure is so substantial that it actually serves as the basis for the Court's decision to deny joinder, that disclosure is functionally useless and akin to no disclosure at all. In these circumstances, this Court has no trouble finding that Plaintiffs violated Rule 4:5-1(b)(2) in connection with the State Court Matters.

### C.     The Propriety of Dismissal as a Sanction for Plaintiffs' Violation

Having found that Plaintiffs violated New Jersey Court Rule 4:5-1(b)(2) by failing to timely identify Defendants Frumento and Chicago Title as potentially necessary parties in the State Court Matters, this Court must now consider whether Plaintiffs' conduct merits dismissal, as opposed to some lesser sanction, under that Rule. As noted above, that analysis requires the Court to determine whether Plaintiffs' failure was "inexcusable," whether Plaintiffs' violation caused Defendants to suffer "substantial prejudice" (and, if so, whether any sanction short of dismissal might adequately address that prejudice), and whether this suit may fairly be categorized as a "successive action" to the State Court Matters. N.J. Ct. R. 4:5-1(b)(2).

### a.     Plaintiffs' Failure to Disclose Was Inexcusable

The Court next examines whether Plaintiffs' violation of New Jersey Court Rule 4:5-1(b)(2) should be deemed "inexcusable" and notes, at the outset, the relative dearth of case law providing a meaningful analysis of this prong. Indeed, even in the Appellate Division's opinion in Hobart Bros. Co. v. National Union Fire Ins. Co., 806 A.2d 810 (N.J. Super. Ct. App. Div. 2002), which one court in this District has described as, "[t]he leading New Jersey case addressing the concepts of inexcusable conduct and substantial prejudice", Ctr. for Prof'l Advancement v. Mazzie, 347 F. Supp. 2d 150, 156 (D.N.J. 2004), the non-exhaustive list of factors that the Appellate Division flagged for consideration skew heavily toward the issue of substantial prejudice, focusing on potential harm to the unjoined / late-named party. See id. at 156-57 (citing

Hobart Bros., 806 A.2d at 818-19).   This is likely due to the Appellate Division's acknowledgement that "the factors of inexcusable conduct and substantial prejudice are, in a sense, inter-related.   They are different points along a graded spectrum, but it is the final result they produce which must be weighed in deciding whether fairness requires that a party be precluded from presenting its claim." Hobart Bros., 806 A.2d at 819. Therefore, "the existence of substantial prejudice will often serve to render the underlying conduct inexcusable." Ctr. for Prof'l Advancement, 347 F. Supp. 2d at 156.   Nevertheless, a number of the considerations that the Appellate Division identified in Hobart Bros. bear on whether Plaintiffs' violation of Rule 4:5-1(b)(2) in the State Court Matters should be considered "inexcusable."

First, and most importantly, the Court will consider "whether [Plaintiffs'] failure to join or identify [Defendants in the State Court matters] was unreasonable under the circumstances." Id. at 156-57 (citing Hobart Bros., 806 A.2d at 818-19).   For the reasons discussed in Section II(B), above, the Court finds that it was.

Second, the Court will examine "the extent to which judicial resources were employed in the earlier litigation." Id. at 157.   Here, the New Jersey Superior Court has already committed a tremendous level of judicial resources to the State Court Matters, which have been pending in that court for the better part of a decade.   Indeed, the Superior Court presided over a lengthy bench trial to resolve the first "phase" of that litigation and issued a Trial Court Opinion spanning over 200 pages.   The Superior Court will continue to expend significant resources on that litigation, as the parties advise that the Superior Court will also conduct trials on the final two phases of the State Court Matters, and it appears inevitable that at least some of the trial court's determinations will end up before the Appellate Division.

14

Third, the Court acknowledges that the extent to which Defendants have been "substantially prejudiced" by Plaintiffs' violation of Rule 4:5-1(b)(2) also bears on whether Plaintiffs' violation should be deemed "inexcusable." Id. at 156. As set forth in Section II(C)(b), below, the Court has determined that Defendants suffered substantial prejudice as a result of Plaintiffs' actions.

Finally, the Court must consider the possibility that Plaintiffs strategically delayed seeking leave to amend in the State Court Matters. Id. Here, Chicago Title argues that "Plaintiffs waited until they lost their summary judgment motion against the other parties, and only then did they seek to assert their claims against Chicago Title. Such improper litigation tactics are inexcusable under Rule 4:5-1(b)(2)." (Chicago Title Br. at 36-37, ECF No. 71-1). In addressing the timing of their proposed amendment before the Superior Court, Plaintiffs argued that they previously lacked the complete information necessary to justify amendment, as it took a long time to pour over the many documents produced in the State Court Matter. (July 11, 2014 Cert. of Bruce D. Vargo, Ex. A at 57:6-59:5, ECF No. 66-1). While this Court acknowledges that the timing of Plaintiffs' proposed amendment is suspect and may suggest some level of strategic behavior, the Court need not make such an explicit finding to resolve the "inexcusability" prong of its Rule 4:5-1(b)(2) analysis given the other facts discussed in this subsection (i.e., even the Court found that Plaintiffs did not delay for strategic purposes, it would still find Plaintiffs' violation of Rule 4:5-1(b)(2) to be inexcusable in light of those other circumstances) and, therefore, declines to do so.

The Court finds that, on balance, the foregoing factors necessitate a finding that Plaintiffs' violation of New Jersey Court Rule 4:5-1(b)(2) was inexcusable.

### b.    **Substantial Prejudice to Defendants / Propriety of Lesser Sanctions**

As the Court has already concluded that Plaintiffs' violation of New Jersey Court Rule 4:5-1(b)(2) in the State Court Matters was inexcusable, the Court must now determine whether the Defendants will suffer substantial prejudice if Plaintiffs' claims in this case are not barred under that Rule. For the following reasons, the Court finds that both Defendant Frumento and Defendant Chicago Title would be substantially prejudiced if the Court were to allow Plaintiffs to litigate their claims in this case.

It is well-established that the "'substantial prejudice' prong of Rule 4:5-1(b)(2) requires a showing of more than mere inconvenience to the parties." Ricketti, 775 F.3d at 615. In examining the concept of "substantial prejudice" in the context of late notices of claim under the Tort Claims Act, and applying those principles when discussing "substantial prejudice" under Rule 4:5-1(b)(2), the Appellate Division observed that mere delay will not, in itself, constitute the sort of "substantial prejudice" necessary to justify dismissal under the Rule. Mitchell v. Charles P. Procini, D.D.S., P.A., 752 A.2d 349, 353-354 (N.J. Super. Ct. App Div. 2000). Rather, the Appellate Division observed, "[s]ubstantial prejudice in this context means substantial prejudice in maintaining one's defense. Generally, that implies the loss of witnesses, the loss of evidence, fading memories, and the like.'" Id. (internal citations omitted); accord DiFalco v. Merlino, No. A-6059-11T3, 2013 WL 3940983, at *4 (N.J. Super. Ct. App. Div. Aug. 1, 2013). While the New Jersey Supreme Court has since declined to definitively resolve "whether the meaning of the phrase 'substantial prejudice' in [Rule 4:5-1(b)(2)] is entirely coextensive with its meaning in the Tort Claims Act," it did find that the Tort Claims Act jurisprudence "provides a useful starting point", Kent Motor Cars, Inc., 25 A.3d at 1037, thereby implicitly suggesting that other sorts of prejudice may prove "substantial" enough to justify dismissal under Rule 4:5-1(b)(2). Indeed, the Appellate Division

has found that "[t]he running of a period of limitations or the bar of a claim for contribution or indemnification may constitute substantial prejudice in certain contexts." Hobart Bros. Co., 806 A.2d at 819. The Court will now address the various sources of prejudice Defendants have identified.

### i.    Inability to Participate in the State Court Matters

First, both Defendants argue that they will suffer substantial prejudice as a result of their inability to participate in, and influence the outcome of, the State Court Matters. (Frumento Br. at 25, ECF No. 65-1; Chicago Title Br. at 37-38, ECF No. 71-1). The Court notes that, in this case, Plaintiffs have alleged that Defendants participated in a conspiracy with certain defendants involved in the State Court Matter (both Defendants), or are vicariously liable for the actions of certain of those defendants (Chicago Title).   (See generally Compl. ECF No.1, Ex. A). Defendants' fates are therefore inextricably tied to the resolution of Plaintiffs' claims in the State Court Matters. Indeed, Plaintiffs' counsel has admitted that "it may well be that this case will be disposed of if [Plaintiffs are] unsuccessful in the state court . . . depending on what specific issues go to trial and what kind of judgment or verdict we get." (Tr. of June 4, 2015 Oral Arg. at 24:11-14). Plaintiffs clearly should have timely identified their claims against Chicago Title and Frumento so that they could be litigated alongside Plaintiffs' similar claims against other parties in the State Court Matters. The Court finds that Defendants have been substantially prejudiced by virtue of their inability to directly participate in that litigation.

Plaintiffs argue that Defendant Chicago Title's interests are already well-represented in the State Court Matters, as Chicago Title has obtained counsel for certain of its insureds who are parties in those cases, and that its interests are aligned with those of the insureds. (Pl. Opp. to Chicago Title Motion at 31-32, ECF No. 72). First, those counsel represent various insureds and

<u>not</u> Chicago Title, and would not, therefore, be in a position to raise facts and issues unique to Chicago Title. This is particularly problematic in light of the fact that Chicago Title's potential liability in this case is vicarious in nature, and based on the alleged actions of Horizon Title Agency, Inc., a defendant in the State Court Matters. Second, the Court notes that, after conducting a lengthy trial in "phase one" of the State Court Matters, the Superior Court made a number of findings that appear to have absolved both Chicago Title and Horizon Title Agency, Inc. of wrongdoing. (<u>See</u> June 2, 2015 Trial Court Opinion at 188-91, ECF No. 87). Chicago Title argues that those determinations should preclude Plaintiffs' claims herein. (ECF No. 88). Plaintiffs contend that such findings go beyond those the Superior Court was required to make during the "phase one" trial and, as such, may not be afforded such preclusive effect. (ECF No. 90 at 2-4). Plaintiffs note that "the clarification we expect from the Appellate Division will, we believe, be of considerable help to this Court's understanding of just what was necessarily decided by the state court." (<u>Id.</u> at 4). Chicago Title, a non-party to the State Court Matters, has thus been deprived of the ability to participate directly in the appeal of an issue that would be dispositive of Plaintiffs' claims against it.

Defendant Frumento identified three specific issues that, he argued, will necessarily be decided in the State Court Matters and "may significantly impact [his] ability to present a defense in this belated action." (Frumento Br. at 25, ECF No. 65-1). He claims that those issues "will proceed to a final adjudication on the merits without any input or participation from Frumento, depriving him of his day in Court." (<u>Id.</u>). Plaintiffs do not dispute that those issues will be tried to judgment in the State Court Matters or that they may impact Frumento in this litigation. (Pl. Opp. to Frumento Motion at 30-31, ECF No. 66). Instead, Plaintiff argues that Frumento brought any resulting prejudice upon himself by removing this case to federal court, in turn "depriv[ing]

the State Court of the opportunity to consolidate it with the [State Court Matters] when it became clear years ago that the 'ownership' trial would not occur as planned." (Id.). This Court disagrees with Plaintiffs' suggestion that Defendants contributed to their prejudice by invoking federal subject matter jurisdiction. Considering that the Superior Court refused to permit Plaintiffs to add these claims to the State Court Matters in August 2011 due to concerns of delay, nothing before this Court suggests that the Superior Court would have granted what would have amounted to functionally identical relief, albeit via different procedural means, by ordering consolidation when Plaintiffs commenced this matter more than five months later. (See generally Not. of Removal, ECF No. 1) (reflecting that Plaintiffs commenced this matter in the New Jersey Superior Court in February 2012). It is far more likely that Plaintiffs would simply be opposing a similar motion to dismiss in a different forum. Plaintiffs' argument that the Superior Court might have one day brought their claims against Defendants Frumento and Chicago Title into the State Court Matters after the "phase one" trial was adjourned ignores the fact that Superior Court already expressly declined to do so at a time when the projected start of that trial was still four months away.

### ii.   Loss of Claims

Defendants also argue that, because they were not joined in the State Court Matters, they lost the opportunity to bring cross-claims against the other defendants in those cases (and ostensibly believed it unnecessary to commence stand-alone cases against those persons and entities in light of their status as non-parties). Defendants contend that such claims would now be barred by the applicable statute of limitations and, potentially, other legal doctrines. (Frumento Br. at 24-25, ECF No. 65-1; Chicago Title Br. at 39, ECF No. 71-1). Plaintiffs suggest that Defendants' argument is inaccurate, as the limitations period on claims for indemnification and contribution will not even begin running unless and until Plaintiffs obtain a judgment against

19

Defendants. (See Pl. Opp. to Frumento Motion at 28-29, ECF No. 66). As Defendants correctly note, however, notwithstanding the availability of claims for indemnification and contribution, the applicable limitations periods for Defendants' potential affirmative contract and tort claims regarding the events in question, which occurred in 2005 and 2006, have long since run. (Frumento Reply Br. at 11, ECF No. 67; Chicago Title Reply Br. at 15, ECF No. 73). The Court finds that those lost causes of action constitute another form of substantial prejudice.

### iii.    Potential Loss of Discovery

The Court also recognizes that Defendants will be substantially prejudiced by the effects of the passage of time, as the events underlying Plaintiffs' claims took place approximately a decade ago. Chicago Title has advised that one fact potential fact witness has passed away, (Chicago Title Br. at 39, ECF No. 71-1), and while Plaintiffs may be correct that the witness was already deposed for several hours in connection with what appears to be an ex parte investigation that coverage counsel for Chicago Title conducted, (Pl. Opp. to Chicago Title Motion at 33-34), the fact remains that, to the extent that witness could have testified regarding the specific claims at issue in this case, that testimony is now lost. More generally, witness' memories of the events in question are likely to have dulled (while evidence may also have been lost, nothing in the record supports making such a finding at this time). Even if much of the evidence and witness testimony necessary to resolve Plaintiffs' claims in this case overlaps to some degree with that preserved in the discovery process during the State Court Matters, that overlap will not be complete, given the fact that the specific claims at issue here were not part of the state court matters. The Court notes that this constitutes another form of substantial prejudice associated with Plaintiffs' violation of New Jersey Court Rule 4:5-1(b)(2). Ctr. for Prof'l Advancement, 347 F. Supp. 2d at 156 ("Substantial prejudice, as contemplated by Rule 4:5-1(b)(2), means that a person not joined in an

earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action.  Such harm might come about through 'loss of witnesses, loss of evidence, fading memories, and the like.'") (internal citations omitted).

### iv.  Potential Prejudice to Plaintiffs

Finally, the Court addresses Plaintiffs' argument that it "must also consider any prejudice to the plaintiffs and, in particular, whether they "had a fair and reasonable opportunity to have fully litigated [their claims . . .] in the original action." (Pl. Opp. to Frumento Motion at 32, ECF No. 66; Pl. Opp. to Chicago Title Motion at 35, ECF No. 72) (brackets in original) (citations omitted).  Plaintiffs argue that the Superior Court deprived them of that opportunity by denying their motion to amend in the State Court Matters. (Id.).  This Court disagrees.  Plaintiffs certainly had a fair and reasonable opportunity to bring their claims against Defendants Frumento and Chicago Title in the State Court Matters, they simply failed to do so in a timely fashion, prompting the Court to deny their motion for leave to amend.

### v.  No Sanction Short of Dismissal Would Be Appropriate

The Court finds that no sanction, short of dismissal, would adequately address the various types of prejudice set forth above.  No sanction could alter Defendants' inability to participate in the State Court matters, revive Defendants' lost claims or restore witnesses' dulled memories.  Indeed, in identifying those sources of prejudice, the Court focused exclusively on harm that could not be suitably cured through an award of counsel fees or via careful case management herein.  The Court did not include in its analysis other obvious types of prejudice (e.g., costs that Defendants would incur in taking duplicative discovery, the cost-efficiencies that could have been realized through a joint-defensive effort, etc.) that it might have remedied.  In short, the Court has not identified, and no party has proposed, a suitable, less severe sanction that might cure the

substantial prejudice that Plaintiffs caused through their violation of New Jersey Court Rule 4:5-1(b)(2).

     **c.**     **This Case Will Inevitably Become a "Successive Action"**
              **Under New Jersey Court Rule 4:5-1(b)(2)**

The next question in the Court's analysis is whether this suit may fairly be characterized as "successive" to the State Court Matters.  <u>See</u> N.J. Ct. R. 4:5-1(b)(2).  If the Court finds that it may, then it must recommend that the District Court dismiss this matter pursuant to Rule 4:5-1(b)(2).  This Court finds that, regardless of its current status, this case will instantly become a successive action upon the conclusion of the State Court Matters.

Plaintiffs argue that the instant action is a "simultaneous" action, rather than a "successive" case. (Pl. Br. in Opp. to Frumento Motion at 19-22, ECF No. 66).  Accordingly, Plaintiffs maintain that the "the NJ-ECD does not prohibit simultaneous actions – even where the two actions involve the same core set of facts." (<u>Id.</u> at 19-20).  Conversely, Defendant Frumento asserts that the instant action is successive and that it is "the law of New Jersey that a second lawsuit, related to one currently pending, that meets the conditions for application of the entire controversy doctrine should be dismissed." (ECF No. 67 at 7).  Defendant Chicago Title takes a different position in arguing that the successive action requirement for party-joinder ECD is met. (ECF No. 73 at 13).  Specifically, Chicago Title contends that "for ECD purposes, their litigation against Chicago Title in the state court action ended when [Plaintiffs'] motion for leave to amend was denied." (<u>Id.</u> at 14).

As an initial matter, this Court notes that, when determining whether cases are "successive" in the context of a Rule 4:5-1(b)(2) analysis, "'the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions.'" <u>Millennium Bcpbank, N.A. v. First Am. Title Ins. Co.</u>, No. A-1172-10T3, 2011

WL 6412128, at *5 (N.J. Super. Ct. App. Div. Dec. 22, 2011) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)).  After reviewing the record for this matter, including Plaintiffs' Complaint, the parties' descriptions of the State Court Matters and the Hon. James S. Rothschild, J.S.C.'s June 2, 2015 Trial Court Opinion, this Court is satisfied that both pieces of litigation concern the same overarching facts and transactions.  Plaintiffs do not legitimately challenge this point, relying instead on their argument that the State Court Matters and the case at bar should be considered "simultaneous" rather than "successive" in nature.

It appears that no court has addressed the "successive action" factor by applying the plain and ordinary meaning of the word "successive."  The American Heritage College Dictionary defines "successive" as "following in uninterrupted order; consecutive."  (American Heritage College Dictionary (3d ed. 1997).  Here, Plaintiffs commenced the State Court Matters first, and subsequently filed this action.  Consequently, under normal usage, this case is a successive action.  Although Plaintiffs argue that the cases are "simultaneous" (which is correct), nothing about the plain and ordinary meaning of "successive" refutes the conclusion that this action is also successive for the purposes of New Jersey Court Rule 4:5-1(b)(2).  No one can predict with certainty when a lawsuit will end.  On the other hand, where, as here, a litigant has knowledge of a potential claim, that litigant is in complete control of when a lawsuit will begin.  This Court suggests that the word "successive" should therefore be analyzed in connection with the time a lawsuit begins (as opposed to the current focus on when a previously filed action ends) in order to serve the purpose of Rule 4:5-1(b)(2), as discussed above.  As Plaintiffs filed this action long after the State Court Matters, it should be deemed successive.

Notwithstanding this Court's belief regarding the proper method for determining whether an action is "successive" under Rule 4:5-1(b)(2), this Court finds that the eventual conclusion of

23

the State Court Matters[5] will render this question academic.  In Youssef v Dept. of Health And Senior Services, 524 F. App'x 788, 791 (3d Cir. April 24, 2013), the United States Court of Appeals for the Third Circuit remarked that the New Jersey Superior Court had provided "further guidance" on the simultaneous suit issue since the Court of Appeals had last addressed it:  "The state court clarified that its rulings that stated or implied that the entire controversy doctrine precluded only successive suits about related claims . . . did not foreclose the application of the doctrine after one of two simultaneously pending suits concluded."  (citing Archbrook Laguna, L.L.C. v. Marsh, 997 A.2d 1035, 1041 (N.J. Super Ct. App. Div. 2010)).[6]  In Youssef, cases arising from the same set of facts were pending simultaneously in both state and federal court.  Id. at 790, n. 3.  After determining that the plaintiff could have asserted the claims raised in his federal suit during the state court proceeding, and that the state court reached a judgment on the merits of its action during the pendency of the federal case, the Court of Appeals found that the ECD could apply to preclude the plaintiff's claims in the federal action.  Id. at 791.  While both Youssef and the New Jersey Superior Court, Appellate Division's decision on which it is based, Archbrook, concern claims-joinder ECD rather than the disclosure requirements imposed under Rule 4:5-1(b)(2), see Archbrook, 997 A.2d at 1038-42., this Court has no reason to find that the New Jersey

---

[5] As the Court noted above, the record reflects that, to date, only the first phase of the trifurcated State Court Matters has been tried to judgment.

[6] In Archbrook, the Appellate Division also explained the earlier jurisprudence suggesting that the entire controversy doctrine would not apply to simultaneously pending actions, 997 A.2d at 1041, noting that, in certain circumstances involving limitations on federal subject matter jurisdiction, litigants may have no choice but to commence actions in both state and federal courts to ensure that their claims are heard in some forum.  Id.  The Archbrook court clarified that the risk that an application of the ECD in such circumstances might foreclose on a litigant's ability to seek full relief anywhere "provides a sound basis for permitting multiple pending actions arising out of the same operative facts without offending the objectives of the entire controversy doctrine.  It is in that context that we said the entire controversy doctrine applies only to 'successive' suits."  Id. (emphasis added).  The ability to maintain multiple lawsuits in such circumstances is therefore a limited exception to the ECD, and not, as Plaintiffs seem to suggest, the rule.

Supreme Court would apply different definitions to the concept of "successive actions" when considering different aspects of the ECD. Indeed, such an outcome would be nonsensical, in light of the court's guidance that "both Rule 4:30A and Rule 4:5–1(b)(2) advance the same underlying purposes" of preventing "piecemeal and duplicative litigation." Kent Motor Cars, Inc., 25 A.3d at 1037. As the Court relies on Youssef and Archbrook solely for the purpose of determining how New Jersey courts would interpret "successive actions" under New Jersey Court Rule 4:5-1(b)(2), the factual and procedural differences between those cases and the case at bar are of no consequence. The Court therefore finds that, regardless of its current status, this case will become "successive" for the purposes of New Jersey Court Rule 4:5-1(b)(2) immediately upon the conclusion of the State Court Matters.

This finding is significant in that, while this matter is in its relative infancy (despite its age), the State Court Matters have reportedly been on the verge of trial for approximately five years. As of June 2015, the first phase of those trifurcated cases had been tried to judgment over the course of four months. The Superior Court had not yet scheduled a trial for the second phase, and "some small amount of open discovery" remained with regard to the third phase. (Tr. of June 4, 2015 Oral Arg. at 20:11-24). The parties have not provided the Court with an update since that time, and one or both of the remaining phases may have been tried in the interim. Even if they have not, those cases will undoubtedly conclude long before this matter can be resolved on its merits.

The upshot of this analysis is that, the instant the State Court Matters are resolved, this action will become "successive" and should be dismissed pursuant to New Jersey Court Rule 4:5-1(b)(2). It would be a pointless and inexcusable waste of both the parties' and the Court's resources to continue litigating this matter in the interim. The Court therefore respectfully recommends that the District Court administratively terminate this case pending resolution of the

25

State Court Matters.  Upon conclusion of the State Court Matters (the parties should be required to so advise the Court), the District Court should reinstate this case for the limited purpose of dismissing it with prejudice pursuant to New Jersey Court Rule 4:5-1(b)(2).

## III.   **CONCLUSION**

Based on the foregoing, this Court respectfully recommends that the District Court:

(1) Administratively terminate this case pending resolution of the State Court Matters;

(2) Require the parties to advise the District Court once the State Court Matters have been fully and finally adjudicated;

(3) Upon confirmation that the State Court Matters have been fully resolved, dismiss this matter with prejudice as a sanction for Plaintiffs' violation of New Jersey Court Rule 4:5-1(b)(2); and

(4) Deny Plaintiffs' motion for leave to file an amended pleading, (ECF No. 60), and Defendants' motions to dismiss on other (i.e., non-entire controversy doctrine) grounds, (ECF Nos. 68 and 74), as moot.

4/14/16

JOSEPH A. DICKSON, U.S.M.J.

cc:    Hon. Esther Salas, U.S.D.J.