**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PETER MOCCO, LORRAINE MOCCO, and FIRST CONNECTICUT HOLDING GROUP LLC, IV, | : : : : | Civil Action No. 12-1458 (ES) (JAD) |
| Plaintiffs, | : : | OPINION |
| v. | : : | |
| AEGIS FRUMENTO and CHICAGO TITLE INSURANCE COMPANY, | : : : | |
| Defendants. | : : : | |

**SALAS, DISTRICT JUDGE**

Pending before the Court are two pairs of motions to dismiss brought by Defendants Aegis Frumento ("Frumento") and Chicago Title ("CT") (collectively, "Defendants") (D.E. Nos. 65, 68, 71, & 74).[1]  Also pending before the court is a motion for leave to file an amended complaint brought by Plaintiffs Peter Mocco, Lorraine Mocco, and First Connecticut Holding Group LLC, IV ("FCHG IV") (collectively, "Plaintiffs") (D.E. No. 60).  This Court referred these motions to the Honorable Joseph A. Dickson, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B).

On April 14, 2016, Magistrate Judge Dickson issued a Report and Recommendation that the undersigned stay or administratively terminate this case pending resolution of related, consolidated matters currently proceeding in the New Jersey Superior Court (the "State Court

---

[1]      Defendants each filed two separate motions to dismiss: one based on New Jersey's entire controversy doctrine (D.E. Nos. 65 & 71) and one based on other grounds (D.E. Nos. 68 & 74).

Matters"). (D.E. No. 92, Report and Recommendation (the "R & R") at 1). The R & R further recommends that the undersigned dismiss this case with prejudice upon the conclusion of the State Court Matters as a sanction for Plaintiffs' previous violation of Rule 4:5-1(b)(2). (*Id.* at 2). For the reasons set forth below, the Court adopts all portions of the R & R except Magistrate Judge Dickson's analysis regarding whether this action is a "successive action" for purposes of New Jersey Court Rule 4:5-1(b)(2). The Court finds that this action became a "successive action" when the Hon. Paul J. Vichness, J.S.C. (ret.) denied Plaintiffs' motion to amend their pleadings to add Defendants to the State Court Matters. Accordingly, the Court modifies Magistrate Judge Dickson's recommended disposition and GRANTS Defendants' motions to dismiss Plaintiffs' Complaint *with prejudice*.[2]

## I.   BACKGROUND

The Court provides the background of this case in summary fashion because Magistrate Judge Dickson provides the relevant factual and procedural background in the R & R. (*Id.* at 2-4).

Plaintiffs' claims in this action stem from a complicated and lengthy dispute concerning the ownership of certain real estate assets. That dispute—i.e., the subject of the State Court Matters—began in 1998 and comprises several related, consolidated cases.[3] In June 2011, prior to initiating this case, Plaintiffs moved to amend their pleadings in the State Court Matters to add Frumento and CT as defendants. (*See id.* at 2). As discussed in more detail below, the Hon. Paul J. Vichness, J.S.C. (ret.) denied Plaintiffs' motion, finding that Plaintiffs knew or should have

---

[2]      Based on the Court's ultimate determination regarding the impact of Rule 4:5-1(b)(2) on this case, the Court denies the parties' remaining motions as moot. (*See id.* at 2, n.1).

[3]      As the R & R notes, the Superior Court previously entered a trifurcation order in the State Court Matters, and the first phase has already proceeded to a four-month-long trial, following which the Hon. James S. Rothschild, J.S.C., issued a 216-page Trial Court Opinion. (*See id.* at 2-3, n.2).

known about their theory of liability as to Frumento and CT for at least a year prior to filing their motion to amend.  (*See id.*).  In January 2012, Plaintiffs filed this action against Defendants in the Superior Court of New Jersey, asserting civil conspiracy and aiding-and-abetting claims.  (*See* D.E. No. 1, Ex. A ("Complaint")).  In March 2012, Defendants removed this action to federal court.  (*See* D.E. No. 1).  Thereafter, Defendants moved to dismiss Plaintiff's Complaint.  (D.E. Nos. 13 & 14).  Following full briefing on Defendants' motions to dismiss, the Hon. Dennis M. Cavanaugh, U.S.D.J., granted Defendants' motions *with prejudice* on the grounds that New Jersey's entire controversy doctrine ("ECD") barred Plaintiffs' claims.  (*See* D.E. No. 25).

On appeal, the Third Circuit determined that the District Court "did not distinguish between claims-joinder ECD and party-joinder ECD" and failed to make any findings regarding "whether there had been a failure to timely identify Frumento and CT in the state court proceeding, whether any failure was inexcusable, and whether such failure caused Frumento and CT substantial prejudice."  *Mocco v. Frumento*, 564 F. App'x 668, 671 (3d Cir. 2014).  The Third Circuit noted that the foregoing findings "are all required considerations under Rule 4:5-1(b)(2) before a court may impose a dismissal as a sanction."  *Id.*  Accordingly, the Third Circuit vacated the District Court's dismissal and remanded the case "with instructions that the District Court apply a party-joinder ECD analysis when reviewing the sufficiency of the Complaint."  *Id.*  The case was then reassigned to this Court.  (D.E. No. 39).

By Orders dated May 2, 2014, the Court granted Defendants leave to file renewed motions to dismiss in light of the Third Circuit's decision.  (D.E. Nos. 45 & 46).  Following additional motion practice and oral argument, Magistrate Judge Dickson issued an R & R that the undersigned (i) stay or administratively terminate this case pending resolution of the State Court Matters; and

(ii) dismiss this case *with prejudice* upon the conclusion of the State Court Matters as a sanction for Plaintiffs' previous violation of New Jersey Court Rule 4:5-1(b)(2).  (*See* R & R at 1-2).

On April 28, 2016, Plaintiffs filed a timely objection to the R & R pursuant to Local Civil Rule 72.1(c)(2).  (D.E. No. 93, Plaintiffs' Objections to Report and Recommendation Dated April 14, 2016 ("Pl. Obj.")).  On May 19, 2016, CT and Frumento filed separate responses in opposition.  (D.E. No. 97, Chicago Title Insurance Company's Opposition to Plaintiffs' Objections to the Report and Recommendation Dated April 14, 2016 ("CT Opp."); D.E. No. 98, Defendant Aegis Frumento's Response to Plaintiffs' Objections to Magistrate Judge Dickson's Report and Recommendation of Dismissal Based on the Entire Controversy Doctrine ("Frumento Opp.")).  Plaintiff's objections are now ripe for review.

## II.     LEGAL STANDARD

"When a litigant files an objection to a Report and Recommendation, the district court must make a *de novo* determination of those portions to which the litigant objects."  *Leonard Parness Trucking Corp. v. Omnipoint Commc'ns, Inc.*, No. 13-4148, 2013 WL 6002900, at *2 (D.N.J. Nov. 12, 2013) (citing 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(b), and L. Civ. R. 72.1(c)(2)).[4]  The district court may then "accept, reject or modify the recommended disposition . . . ."  *Weber v. Mcgrogan*, No. 14-7340, 2016 WL 3381233, at *2 (D.N.J. June 9, 2016) (quoting Fed. R. Civ. P. 72(b)(3)).  "Unlike an Opinion and Order issued by a Magistrate Judge on a non-dispositive matter, a Report and Recommendation does not have the force of law unless and until the district court enters an order accepting or rejecting it.  *Id.* (citing *United Steelworkers of Am. v. N.J. Zinc Co., Inc.*, 828 F.2d 1001, 1005 (3d Cir. 1987)).

---

[4]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

## III.   DISCUSSION

### A.  Party Joinder and the New Jersey Entire Controversy Doctrine

Because the Court finds that Plaintiffs' violation of Rule 4:5-1(b)(2)[5] in the State Court Matters warrants dismissal of this action, the Court provides a brief overview of New Jersey's ECD as it relates to party joinder.  The Third Circuit has described the ECD as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles."  *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015).  The ECD encapsulates New Jersey's "longstanding policy judgment that the adjudication of a legal controversy should occur in one litigation in only one court."  *Id.*  At bottom, the ECD is a doctrine of equity and rests upon the "twin pillars [of] fairness to the parties and fairness to the system of judicial administration."  *Joel v. Morrocco*, 147 N.J. 546, 555 (1997).  The purposes of the doctrine include "the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to the parties, and the need for complete and final disposition through the avoidance of piecemeal decisions."  *Kent Motor Cars, Inc. v. Reynolds and Reynolds, Co.*, 207 N.J. 428, 443 (2011).

A bit of history here is helpful.  While the ECD originated solely as a claim-preclusion rule, over time it evolved also to require joinder of parties.  *Mocco*, 564 F. App'x at 670.  In 1990, the Supreme Court of New Jersey adopted Rule 4:30A, which (at the time) provided that "[n]on-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in

---

[5]      Rule 4:5-1(b)(2) provides in relevant part:

[i]f a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule.  A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." *Id*; *see also Ricketti*, 775 F.3d at 614.  But, as the Supreme Court of New Jersey observed, "[s]cholarly criticism of the doctrine's growth . . . followed swiftly," and "eventually the Court moderated its approach by reinterpreting the doctrine as it related to parties . . . ." *Kent Motor Cars, Inc.*, 207 N.J. at 444.  Ultimately, Rule 4:30A was amended to eliminate mandatory party joinder, and Rule 4:5-1(b)(2) was adopted to address party joinder.  *Id.*

Today, "[t]he ECD comes in two varieties: 'claims-joinder' ECD and 'party-joinder' ECD."[6] *Mocco*, 564 F. App'x at 670.  Generally, claims-joinder ECD requires all related claims between the same parties to be adjudicated together.  *Id.*  Party-joinder ECD, on the other hand, is essentially an ongoing notice requirement mandating that a party to any litigation . . . reveal the existence of any non-party who should be joined or who might have "potential liability to any party on the basis of the same transactional facts."  *Id.* (quoting N.J. Ct. R. 4:5–1(b)(2)).  Under the current party-joinder regime, "[o]utright dismissal of a civil action for failure to comply with Rule 4:5-1(b)(2) is appropriate only when: (1) the suit is a 'successive suit'; (2) the plaintiff's failure to disclose the existence of other potentially liable parties in the earlier litigation was 'inexcusable'; and (3) the undisclosed parties' right to defend the successive action was 'substantially prejudiced' by their omission."  *Ricketti*, 775 F.3d at 615 (quoting N.J. Ct. R. 4:5–1(b)(2)).

---

[6]     As discussed further in Section III.C.3 *infra*, the law surrounding party-joinder ECD is all but settled.  Indeed, the Third Circuit recently observed that the ECD may no longer include party joinder.  *See Ricketti*, 775 F.3d at 614 n.2 ("The parties dispute whether the [ECD] still includes party joinder—a disagreement also discernible in caselaw discussing the doctrine. *Compare Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 n.1 (3d Cir. 1999) ("The party joiner aspect of the doctrine . . . has now been eliminated."), *with Heir [v. Del. River Port Auth.]*, 218 F. Supp. 2d 627, 632 (rooting the doctrine in 'several of the New Jersey Rules of Court,' including Rules 4:30A and 4:5-1(b)(2)).").

To be sure, application of party-joinder ECD "raises the potential, but not the certainty, of sanctions, including the possibility of dismissal." *Mocco*, 564 F. App'x at 670-71. Therefore, even if a court determines that party-joinder ECD applies, it must consider whether lesser sanctions than outright dismissal would be appropriate. *Id.* at 671. Such sanctions may include the imposition of litigation costs on the noncomplying party, as well as any others that the court finds "appropriate." N.J. Ct. R. 4:5–1(b)(2); *see Kent Motor Cars, Inc.*, 207 N.J. at 445.

### B. The R & R and Plaintiffs' Objections

In light of the foregoing, Magistrate Judge Dickson first determined that Plaintiffs violated Rule 4:5-1(b)(2) by failing to timely identify CT and Frumento as potentially necessary parties in the State Court Matters.[7]  (*See* R & R at 13).  Next, Magistrate Judge Dickson found that each of the three party-joinder elements was satisfied and that no sanction short of dismissal would adequately address the prejudice Defendants suffered.  (*See id.* at 15, 21-22).

Plaintiffs object to Magistrate Judge Dickson's finding with respect to each party-joinder element, as well as Magistrate Judge Dickson's finding that Defendants were excluded from participating in the State Court Matters.[8]  Specifically, Plaintiffs object to the following four portions of Magistrate Judge Dickson's R & R: (i) that Plaintiffs' one-year delay in seeking to add CT and Frumento as defendants in the State Court Matters constitutes "inexcusable failure to comply" with Rule 4:5-1(b)(2) (*see* R & R at 8-13; Pl. Obj. at 18-22); (ii) that Defendants suffered

---

[7]      During oral argument before Magistrate Judge Dickson, Plaintiff's counsel expressly conceded that Plaintiffs never updated their Rule 4:5-1(b)(2) disclosure to identify Defendants in the State Court Matters. (*See* D.E. 91, Tr. of June 4, 2015 Argument at 15:10-16:6; *see also* R & R at 8). Rather, Plaintiffs argued before Magistrate Judge Dickson that their motion to amend their pleadings to add Defendants in the State Court Matters satisfied their disclosure obligations under the Rule. (*See* R & R at 8-12). Magistrate Judge Dickson rejected this argument (*see id.*), and Plaintiffs do not appear to challenge this finding.

[8]      Defendants argued—and Magistrate Judge Dickson agreed—that Defendants' exclusion from the State Court Matters is a source of prejudice relevant to the "substantial prejudice" element of the party-joinder analysis. (*See* R & R at 17-19). The Court addresses this argument in Section III.C.2.i.

substantial prejudice, warranting dismissal of this action (*see* R & R at 13-21; Pl. Obj. at 23-30); (iii) that Defendants were excluded from participating in the State Court Matters (*see* R & R at 17-19; Pl. Obj. at 10-14); and (iv) that this case is a "successive action" within the meaning of the ECD (*see* R & R at 22-25; Pl. Obj. at 14-18).  The Court will address each objection in turn.

### C. Analysis

#### 1. Plaintiffs' One-Year Delay in Seeking to Add CT and Frumento as Defendants in the State Court Matters Constitutes "Inexcusable Failure to Comply" with Rule 4:5-1(b)(2)

In *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, the Appellate Division identified a non-exhaustive list of factors for courts to consider when evaluating the "inexcusable" and "substantial prejudice" prongs of the party-joinder analysis.  354 N.J. Super. 229, 243-44 (App. Div. 2002). As Magistrate Judge Dickson aptly noted, however, the factors "skew heavily toward the issue of substantial prejudice, focusing on potential harm to the unjoined/late-named party."  (R & R at 13).  And the Court agrees with Magistrate Judge Dickson that at least four of the factors bear on the "inexcusable" prong.  (*See id.* at 14-15).  Those factors are (i) whether Plaintiff's non-compliance was unreasonable under the circumstances; (ii) the extent to which judicial resources were employed in the earlier litigation; (iii) the extent to which Defendants suffered substantial prejudice; and (iv) whether Plaintiffs strategically delayed in seeking leave to amend their pleadings.  (*See id.*).

*First*, the Court finds that Plaintiffs' non-compliance with Rule 4:5-1(b)(2) was unreasonable under the circumstances.  By way of background, on August 5, 2011, Judge Vichness determined that, "at the very least, [Plaintiffs] had a year" to obtain "the basic information that would give rise to at least [their] theory of liability."  (*See id.* at 2).  Consequently, Judge Vichness refused to allow Plaintiffs to "bring in new parties and apply new theories on litigation that started back in 1998."  (*Id.*).  While this Court is cognizant of its obligation to review *de novo* the objected-

to portions of the R & R, the Court agrees with Magistrate Judge Dickson that Judge Vichness's finding is relevant to assessing the egregiousness of Plaintiffs' non-compliance with Rule 4:5-1(b)(2), as the Superior Court "presided over the State Court Matters for years and is therefore well-acquainted with the factual and procedural circumstances at issue there." (*Id.* at 11).

Plaintiffs assert that Defendants "never even attempted to meet their burden of showing that taking a year to examine the documents and draft the necessary amended pleadings was 'inexcusable' under whatever circumstances prevailed at the time." (Pl. Obj. at 19). But Defendants chronicled in their moving briefs the circumstances surrounding Plaintiffs' knowledge of potential claims against them (*see* D.E. No. 71-1 at 4-17; D.E. No. 65-1 at 8, 21-22) and argued persuasively that Plaintiffs likely had sufficient information giving rise to potential claims against Defendants as early as 2006 (*see, e.g.*, CT Opp. at 18). In fact, Plaintiffs had asserted claims in the State Court Matters against CT twice before—once in 2007 and again in 2009—but voluntarily dismissed them each time. (*See, e.g.*, D.E. No. 71-1 at 6-7 (explaining that Plaintiffs alleged a "Quiet Title/Declarative Judgment" claim against CT on March 7, 2007, but voluntarily dismissed it on May 24, 2007)). And courts routinely find such delays inexcusable under Rule 4:5-1(b)(2). *See, e.g.*, *Beale v. Rubin & Rothman, LLC*, No. 08-4279, 2009 WL 1916322, at *3-4 (D.N.J. June 29, 2009) (two-year delay inexcusable under Rule 4:5-1(b)(2)); *Alvarez v. Borough of Hoboken*, Docket Nos. L-387-08 and L-1206-11, 2013 WL 4236116, at *14 (N.J. Super. Ct. App. Div. Aug. 16, 2013) (six-month delay inexcusable under Rule 4:5-1(b)(2)); *Mitchell v. Charles P. Procini, D.D.S., P.A.*, 315 N.J. Super. 557, 563-64 (App. Div. 1998) (ten-month delay inexcusable under Rule 4:5-1(b)(2)).

Moreover, the issue here is whether Plaintiffs' non-compliance with Rule 4:5-1(b)(2)'s ongoing notice requirement was inexcusable, not whether Plaintiffs' delay in "draft[ing] the

necessary amended pleadings was inexcusable" (Pl. Obj. at 19).  That it may have taken Plaintiffs more time to draft amended pleadings is irrelevant; Plaintiffs were required simply to file an amended Rule 4:5-1(b)(2) certification in the State Court Matters, and they failed to do so.  For this reason, the Court is unpersuaded by Plaintiffs' argument that CT's purported obstructionist tactics during discovery from April 2010 to June 2011 (i.e., the year in question) hampered Plaintiffs' ability to comply with Rule 4:5-1(b)(2).  (*See id.* at 19-22).

*Second*, the Court finds that substantial judicial resources have been employed in the State Court Matters, which have been pending in the New Jersey Superior Court since 1998.  As noted above, the Superior Court previously entered a trifurcation order, and the first phase has already proceeded to a four-month-long trial, resulting in a 216-page Trial Court Opinion.  (*See* R & R at 2-3, n.2).  This Court agrees with Magistrate Judge Dickson's observation that "[t]he Superior Court will continue to expend significant resources on that litigation . . . and it appears inevitable that at least some of the trial court's determinations will end up before the Appellate Division." (*Id.* at 14).  Plaintiffs seemingly do not dispute this point.

*Third*, as discussed in Section III.C.2 *infra*, Defendants have suffered substantial prejudice as a result of Plaintiffs' failure to identify them in the State Court Matters.  This determination is relevant to whether Plaintiffs' non-complaince with Rule 4:5-1(b)(2) was inexcusable.  *Ctr. For Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 156 (D.N.J. 2004) ("The concepts of inexcusable conduct and substantial prejudice are interrelated such that the existence of substantial prejudice will often serve to render the underlying conduct inexcusable.").

*Fourth*, the Court notes the possibility that Plaintiffs could have strategically delayed in moving to add Defendants in the State Court Matters, as Plaintiffs waited until after they lost on summary judgment to file their amended pleadings.  *See Hobart Bros.*, 354 N.J. Super. at 241 ("On

the other hand, a court must also be sensitive to the possibility that a party has purposely withheld claims from an earlier suit for strategic reasons or to obtain 'two bites at the apple.' A court should not permit itself to be made a party to such strategic choices that wreak unfair results upon others.").

In light of the foregoing, the Court finds that Plaintiffs' one-year delay in seeking to add Defendants in the State Court Matters constitutes "inexcusable failure to comply" with Rule 4:5-1(b)(2).

> **2. Defendants Suffered Substantial Prejudice as a Result of Plaintiffs' Violation of Rule 4:5-1(b)(2)**

"Substantial prejudice" under Rule 4:5-1(b)(2) "means that a person not joined in an earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action." *Ctr. for Prof'l Advancement*, 347 F. Supp. 2d at 156. Thus, the "substantial prejudice" prong of the party-joinder analysis requires a showing of more than mere inconvenience to the parties. *Ricketti*, 775 F.3d at 615. Factors courts consider when determining substantial prejudice under Rule 4:5-1(b)(2) include "the loss of witnesses, the loss of evidence, fading memories, and the like." *Mitchell v. Charles P. Procini, D.D.S., P.A.*, 331 N.J. Super. 445, 454 (App. Div. 2000). In addition, "[t]he running of a period of limitations or the bar of a claim for contribution or indemnification may constitute substantial prejudice in certain contexts." *Hobart Bros.*, 354 N.J. Super. at 243.

Magistrate Judge Dickson considered the following four factors to determine whether Defendants suffered substantial prejudice: (i) Defendants' inability to participate in the State Court Matters; (ii) Defendants' loss of potential claims; (iii) the potential loss of discovery; and (iv) the potential prejudice to Plaintiffs. (*See* R & R at 17-21). Plaintiffs object to Magistrate Judge Dickson's findings with respect to the first three factors.

- 11 -

### i.   Defendants' Inability to Participate in the State Court Matters

The Court concludes that Defendants will suffer substantial prejudice as a result of their inability to participate in, and influence the outcome of, the State Court Matters.  In this case, Plaintiffs allege that Defendants aided and abetted, conspired with, or aided and abetted a conspiracy involving certain defendants in the State Court Matters.  (*See* Complaint).  The Court agrees with Magistrate Judge Dickson that "Defendants' fates are therefore inextricably tied to the resolution of Plaintiffs' claims in the State Court Matters."  (R & R at 17); *see Gelber v. Zito P'ship*, 147 N.J. 561, 566-67 (1997) (finding substantial prejudice under Rule 4:5-1(b)(2) where claims against new defendant were intertwined with claims against other defendants, and new defendant and court were deprived of the "opportunity to have the Superior Court manage or otherwise coordinate the two proceedings").  Indeed, Plaintiffs' counsel admitted during oral argument before Magistrate Judge Dickson that "it may well be that this case will be disposed of if [Plaintiffs are] unsuccessful in the state court . . . depending on what specific issues go to trial and what kind of judgment or verdict we get."  (D.E. No. 91, Tr. of June 4, 2015 Argument at 24:11-14).  Furthermore, Plaintiffs are challenging on appeal the Superior Court's findings that CT acted in good faith, which is a finding that, if affirmed, would be dispositive of Plaintiffs' vicarious-liability claims against CT.  (*See* R & R at 18).  Accordingly, CT has been "deprived of the ability to participate directly in the appeal of an issue that would be dispositive of Plaintiffs' claims against it."  (*Id.*).

Plaintiffs argue that CT "has been a full and active participant in the state court proceedings to the point that a judgment was entered granting an equitable lien in favor of CT in the amount of $1.776 mil, an amount which has since been paid."  (Pl. Obj. at 24).  But CT's involvement in the State Court Matters is limited to defending its insureds as a subrogee.  And any representation on

- 12 -

behalf of those insureds is exactly that—representation on behalf of its insureds and not CT. Accordingly, Magistrate Judge Dickson correctly concluded that those counsel retained by CT to represent CT's insureds do not represent CT's interests and would not "be in a position to raise facts and issues unique to [CT]."  (R & R at 18).

Plaintiffs concede that Frumento "was not given an opportunity to participate" in the State Court Matters."  (Pl. Obj. at 25).  Nevertheless, Plaintiffs assert that Frumento deprived himself of that opportunity by removing this case to federal court.  (*Id.*).  Plaintiffs maintain that, "[h]ad the case been left in state court where [Plaintiffs] filed it in January 2012, there could have been a consolidation and he could have opted to participate" in the State Court Matters.  (*Id.*).  The Court is not persuaded by this argument.  First, Plaintiffs do not provide any authority for the proposition that Frumento's removal of this action waived his right to claim he was not timely joined in the State Court Matters.  Second, the Court finds it unlikely that the Superior Court would have consolidated this action when it rejected Plaintiffs' attempt to add Defendants to the State Court Matters five months earlier.  Accordingly, the Court concludes that Defendants' exclusion from the State Court Matters impedes their ability to maintain an adequate defense in this action.

### ii.    Defendants' Loss of Potential Claims

Plaintiffs assert three arguments regarding Magistrate Judge Dickson's finding with respect to Defendants' loss of potential claims.  First, Plaintiffs argue that Defendants' potential claims for contribution or indemnification are not time barred—and thus remain available—because the statute of limitations for such claims begins to accrue when the plaintiff recovers a judgment against the defendant.  (*Id.* at 26 (citing *Mettinger v. Globe Slicing Mach. Co.*, 153 N.J. 371, 387 (1998)).).  Second, Plaintiffs aver that Defendants failed to specify "any particular tort or contract claim which they could or would assert other than the contribution or indemnity claims."  (*Id.*).

Third, Plaintiffs contend that Frumento (i) "was not a party to any of the contracts involved in this case" and therefore cannot assert any contract claims (*see id.* at 27); and (ii) "neither paid nor lost any money in the subject transactions" and therefore cannot assert any tort claims (*see id.*). Consequently, Plaintiffs argue that Frumento's only conceivable claims are contribution and indemnity claims, which are not time barred.  (*Id.*).

With respect to Defendants' potential contribution and indemnity claims, the Court agrees with Plaintiffs that such claims are not time-barred.  As to Defendants' potential contract or tort claims, however, the Court is unwilling to find as a matter of law that Defendants could not have asserted any such claims against any of the parties in the State Court Matters.  And, because the events in question occurred in 2005 and 2006, Defendants are now foreclosed from asserting any contract or tort claims, as the applicable limitations periods have long since run.

### iii.    The Potential Loss of Discovery

Plaintiffs object to two portions of Magistrate Judge Dickson's finding with respect to the potential loss of discovery.   First, Plaintiffs contend that Magistrate Judge Dickson merely concluded, as a general matter, that the effects of the passage of time will prejudice Defendants, but New Jersey courts "have consistently required an evidentiary record showing specific 'prejudice' or loss flowing from specific lost testimony or documents."  (*See* Pl. Obj. at 23-24; *see also* R & R at 20).  Second, Plaintiffs take issue with Defendants' assertion that the unavailability of a potential fact witness (who is now deceased) prejudices Defendants.  (*See* Pl. Obj. at 28-30).

In arguing that the passage of time will not prejudice Defendants, Plaintiffs rely on three cases.  The Court finds each distinguishable.  In *Mitchell*, the defendant dentist argued that he was substantially prejudiced in a successive malpractice action because his exclusion from a previous action precluded him from interviewing the plaintiff prior to a dental surgery.  331 N.J. Super. at

448.  In that case, however, the dental surgery occurred no more than three years before the successive action.  *Id.* at 448-49.  Here, the events in question occurred over a decade ago.  Similarly, in *Mazzie*, the plaintiff initiated a successive action no more than two years after the events in question.  347 F. Supp. 2d at 156.  Finally, *700 Highway* (where the events leading to the first action occurred six years prior to the successive action) is inapposite because the Appellate Division found that the successive action did not necessarily arise out of the same transactional facts as the earlier action.  421 N.J. Super. 231, 237 (App. Div. 2011) ("[Defendants] claim they were substantially prejudiced by not being named as parties in the first suit, because they did not have an opportunity to participate in discovery in the 2003 action, and memories of witnesses likely have faded.  However, depositions and memories of witnesses in the 2003 action may or may not have anything to do with the claims in the present action.").

The Court finds it reasonable to conclude that Defendants' exclusion from the discovery process regarding facts that occurred over a decade ago, given the factual and procedural posture of this case, will hamper Defendants' ability to defend this action.  Indeed, courts routinely cite "fading memories" as a factor to consider when evaluating substantial prejudice.  *Manocare Health Servs. v. Osmose Wood Preserving, Inc.*, 336 N.J. Super. 218, 235 (App. Div. 2001).  The Court does not think Defendants need to provide a specific example of a witness's fading memory to support its argument that the passing of over ten years is likely to result in a witness's fading memory.

Moreover, Defendants identify a potential fact witness (an attorney named Kenneth Williams) who passed away prior to Plaintiffs' initiation of this action.  (*See* R & R at 20-21).  Plaintiffs argue that "at most Mr. Williams was a witness of peripheral value whose testimony could easily be replaced by the testimony of his partner . . . and records which he has already given

- 15 -

to CT." (Pl. Obj. at 29). Plaintiffs further argue that CT already "examine[d] Mr. Williams for 6-1/2 hours and included in that examination was a detailed questioning of Mr. Williams about his communications with Mocco's counsel and in particular about emails between him and Mocco's counsel which he produced and which CT has." (*Id.* at 28). Finally, Plaintiffs assert that, because they filed this action within the six-year statute of limitations period, "the death of a witness cannot act as 'substantial prejudice' requiring dismissal of a case." (*Id.* at 30 (citing *Hillsborough Twp. Bd. Of Educ. v. Faridy Thorne Frayta, P.C.*, 321 N.J. Super. 275, 287-88 (App. Div. 1999)).).

The Court is unpersuaded by Plaintiffs' arguments. First, CT's coverage counsel examined Mr. Williams ex parte in connection with a coverage investigation concerning one of CT's insureds, which Mr. Williams previously represented. (*See* D.E. No. 72 at 33). The Court agrees with Magistrate Judge Dickson that this type of investigation is wholly different from the type CT would take as a party to a litigation, and "to the extent [Mr. Williams] could have testified regarding the specific claims at issue in this case, that testimony is now lost." (R & R at 20). Furthermore, the Court is mindful that this earlier testimony may not be admissible under New Jersey Court Rule 4:16-1(c), which permits the use of deposition testimony "against any other party who was present or represented at the taking of the deposition or who had reasonable notice thereof . . . ." Indeed, Plaintiffs state that, "[b]ecause the examination was conducted pursuant to the provisions of the title insurance policy between Chicago Title and its insured, Dare Investments, the Moccos were not provided notice or an opportunity to attend." (D.E. No. 72 at 34).

Additionally, Plaintiffs do not provide any support for their argument that testimony from Mr. Williams's partner could replace Mr. Williams's lost testimony. (*See* Pl. Obj. at 29). Defendants assert that "it was Mr. Williams who was serially communicating with counsel for the

Moccos, and not Mr. Galante (a bankruptcy attorney), and therefore the witness with actual firsthand knowledge regarding defenses and claims unique to [CT]."  (CT Opp. at 28-29).  The Court is unpersuaded by Plaintiffs' (unsupported) argument that Mr. Williams's partner's testimony could replace Mr. Williams's lost testimony by virtue of the fact that he was Mr. Williams's law partner.  Finally, Plaintiffs' reliance on *Hillsborough* is misplaced because that case involved distinguishable facts.  321 N.J. Super. 275 (App. Div. 1999).  In *Hillsborough*, the court found that the plaintiff's claims against two defendants were not barred by claims-joinder ECD because the specific claims the plaintiff sought to allege against the two defendants were not adjudicated on their merits.  *Id.* at 287-88.  Thus, the court concluded that the plaintiff, "even in the absence of any earlier filing, could have waited six years before initiating an action against [the defendants] and still have been within the statute of limitations period."  *Id.*  The circumstances here are entirely different: the Superior Court foreclosed Plaintiffs from asserting claims against Defendants arising from the same transactional facts as the State Court Matters, and Plaintiffs thereafter initiated a separate action asserting virtually the very claims the Superior Court barred.

### 3.  This Case is a "Successive Action" under Rule 4:5-1(b)(2)

Next, the Court turns to whether this case is a "successive action" for purposes of Rule 4:5-1(b)(2).  This question is not as simple as it sounds.  As an initial matter, to determine whether actions are successive, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions."  *Millennium Bcpbank, N.A. v. First Am. Title Ins. Co.*, Docket No. L-7324-08, 2011 WL 6412128, at *5 (N.J. Super. Ct. App. Div. Dec. 22, 2011).[9]  But the "successive" requirement also inherently contains a timing

---

[9]       As Magistrate Judge Dickson noted, "Plaintiffs do not legitimately challenge this point, relying instead on their argument that the State Court Matters and the case at bar should be considered 'simultaneous' rather than 'successive.'"  (R & R at 23).

requirement.  As the Appellate Division in *Alpha Beauty Distribs., Inc. v. Winn-Dixie Stores, Inc.* explained, "[b]y 'successive action,' the Rule clearly meant to encompass only actions *following* the suit in which the Rule 4:5-1(b)(2) violation occurred."  425 N.J. Super. 94, 101 (App. Div. 2012) (emphasis in original).  The "most obvious example," according to the *Alpha Beauty* court, is "where A sues B for personal injury damages, and then, later, after A v. B is concluded, A brings a claim against C for having caused the same injuries.  A v. C would be a 'successive action' within the intendment of the Rule . . . ."  *Id.*  Of course, this is but one "obvious example" (to say nothing of non-obvious examples), and the dearth of case law addressing this issue does not provide a direct answer to what exactly it means for a case to be "successive" for purposes of Rule 4:5-1(b)(2).  *See, e.g.*, *Alvarez*, 2011 WL 4236116, at *14 (finding subsequent action "successive" because "litigation *of the merits of plaintiff's complaint* against Hoboken ended when the court granted Hoboken's summary judgment motion"); *Archbrook Laguna, LLC, v. Marsh*, 414 N.J. Super. 97, 109 n.4 (App. Div. 2010) (finding "no merit" in plaintiff's argument that the entire controversy doctrine could not be implemented until disposition of the first action); *Millennium Bcpbank*, 2011 WL 6412128, at *4 (defining a "successive action" as one that "arise[s] from the same series of transactions" as the first action).

Plaintiffs argue this action is "simultaneous" and not "successive" because it commenced during the pendency of the State Court Matters.  (D.E. No. 69 at 19).  Defendants argue this action is "successive" but on different grounds.  CT argues that this action became "successive" when the Superior Court denied Plaintiffs' motion to add Defendants to the State Court Matters, since that denial "foreclosed [Plaintiffs] from ever being permitted to assert claims against [Defendants] in the [State Court Matters] again."  (CT Opp. at 10).  Frumento argues that this action is

"successive" because it was "filed after the initial lawsuit where the party should have been identified" and it "arise[s] from the same set of facts or occurrences." (D.E. No. 65-1 at 16).

Magistrate Judge Dickson, on the other hand, applied the plain and ordinary meaning of "successive" and found that, "under normal usage, this case is a successive action." (*See* R & R at 23 (defining "successive" as "following in uninterrupted order; consecutive," per the American Heritage College Dictionary (3d ed. 1997))).[10] Nevertheless, Magistrate Judge Dickson found that this question is academic because as soon as the State Court Matters conclude, this case will become "successive" under Rule 4:5-1(b)(2). (*Id.* at 23-24).

The Court agrees with CT that this case became a "successive action" when the Superior Court denied Plaintiffs' motion to amend their pleadings to join Defendants in the State Court Matters. First, the Court rejects Plaintiffs' argument that this case can never become "successive" because it was filed during the pendency of the State Court Matters. (*See* Pl. Obj. at 16 (asserting that "a case is a 'successive action' for purposes of Rule 4:5-1(b)(2) only if it is *filed after the first case is 'tried to judgment or settled*.'" (emphasis in original)).). In *Rycoline Prods., Inc. v. C & W Unlimited*, the Third Circuit left open the question whether, "where two actions are pending simultaneously, the Entire Controversy Doctrine may be raised at the time one action is concluded to preclude completely the other action." 109 F.3d 883, 889 n.2 (3d Cir. 1997). Recently, however, the Third Circuit addressed this issue, finding that, where two actions are pending simultaneously, a party may invoke the ECD at the time one action is concluded to preclude completely the other action. *Youssef v. Dept. of Health & Sr. Servs.*, 524 F. App'x 788, 791 (3d

---

[10]    Magistrate Judge Dickson acknowledges that "no court has addressed the 'successive action' factor by applying the plain and ordinary meaning of the word 'successive.'" (R & R at 23). While the Court declines to adopt this dictionary-definition approach, the Court credits Magistrate Judge Dickson's attempt to inject much-needed clarity and common sense into the murky and befuddling jurisprudence comprising New Jersey's party-joinder ECD.

Cir. 2013).  Although these cases concerned claims-joinder ECD, the Court finds no reason to distinguish between claims-joinder ECD and party-joinder ECD as they relate to the meaning of "successive."  This is because, as Magistrate Judge Dickson correctly noted, "both Rule 4:30A and Rule 4:5-1(b)(2) advance the same underlying purposes of preventing piecemeal and duplicative litigation."  (R & R at 25 (citing *Kent Motor Cars, Inc.*, 207 N.J. at 445)).

Plaintiffs also raise the argument that this case cannot become "successive" until final adjudication of the State Court Matters.  (*See* D.E. No. 69 at 20).  New Jersey law on this issue is unsettled; however, the weight of authority persuades this Court to reject Plaintiffs' argument, especially given the specific factual and procedural context of this case.  As an initial matter, the Court is guided by several Appellate Division cases that seem to contradict this argument.  *See, e.g.*, *Archbrook Laguna, LLC*, 414 N.J. Super. at 109 n.4 (finding "no merit" in plaintiff's argument that the entire controversy doctrine could not be implemented until disposition of the first suit); *Wm Blanchard Co. v. Beach Concrete Co., Inc.*, 150 N.J. Super. 277, 290-92 (App. Div. 1977) (dismissing new action because plaintiffs were denied leave to assert new claims in an earlier but still-pending action against same defendants, explaining that "the failure to have raised these claims in this litigation would have barred their being raised in any subsequent litigation"); *see also Fisher v. Yates*, 270 N.J. Super. 458, 467 (App. Div. 1994) ("Although it is a significant factor that the pleader will lose a cause of action under the entire controversy doctrine if the motion for leave to amend the pleadings is denied, it is not necessarily the dispositive consideration, particularly where the assertion is so late as to prejudice other parties.").

In particular, the Appellate Division's decision in *Wm Blanchard* is instructive.  That case arose from a multi-party dispute concerning the construction of a 20-story office building in Newark, New Jersey.  150 N.J. Super. at 282.  The dispute involved the building's owner, the

general contractor, two subcontractors, a sub-subcontractor, and the architect. *Id.* at 282-83. Two separate actions were instituted to resolve various claims stemming from the building's construction; however, all the parties eventually entered into an agreement to consolidate the actions into a single proceeding. *Id.* at 286-89. Significantly, the owner and the general contractor intentionally withheld certain delay claims against each other in the pending litigation in an effort to present a united front against the affirmative claims made by the other parties against them. *Id.* at 287. Nevertheless, after the Superior Court entered a pre-trial order and engaged in settlement discussions with all the parties, the owner and the general contractor finally moved to amend their pleadings to assert their respective delay claims. *Id.* at 290.

The Superior Court denied the parties' motions to amend. *Id.* The owner then filed a new action asserting the very delay claims the court previously disallowed, and the court dismissed the owner's new complaint with prejudice on ECD grounds. *Id.* The Appellate Division affirmed the court's decision, concluding that "the [owner's] failure to have raised these claims in this litigation would have barred their being raised in any subsequent litigation." *Id.* at 292. The Appellate Division further explained:

> The entire controversy doctrine and the mandatory joinder rule became relevant at that juncture of the case because it was entirely appropriate, if not indeed mandated, that the trial judge, in determining whether to allow the claims to be made belatedly, should consider the preclusionary consequences of his denial of that leave. He correctly concluded that if the claims were not permitted to be raised in this litigation, they would be thereafter barred. Although that is a conclusion ordinarily militating toward the grant of amendatory relief, the trial judge did not abuse his discretion in denying it under these extraordinary circumstances.

*Id.* at 299-300.

The Court's conclusion that this case is a "successive action" for purposes of Rule 4:5-1(b)(2) is consistent with New Jersey ECD law. As numerous cases observe, "[b]ecause a violation of the entire controversy doctrine may result in the preclusion of a claim, a court must consider

whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim." *Hobart Bros. Co.*, 354 N.J. Super. at 242.  Here, the Court has already found that Plaintiffs had a fair and reasonable opportunity to litigate their claims against Defendants in the State Court Matters.  Indeed, this finding is inherent in the Court's determination that Plaintiffs' violation of Rule 4:5-1(b)(2) was "inexcusable."  (*See* Section III.C.1 *supra*).  The Court also notes that Judge Vichness and Magistrate Judge Dickson arrived at the same conclusion based on the unique facts of this case.

Plaintiffs argue that, because the State Court Matters are still pending, "the courts can still address entire controversy policy considerations through consolidation, intervention, case management, a stay, etc." (D.E. 69 at 19).  This argument would be more persuasive, however, if the Superior Court had not previously denied Plaintiffs' motion to add Defendants to the State Court Matters.  For instance, had Plaintiffs simply filed a separate action against Defendants without first attempting to add them to the State Court Matters, the courts and parties could have addressed alternative mechanisms for achieving the goals of the ECD.  But once the Superior Court barred Plaintiffs from asserting the civil conspiracy and aiding-and-abetting claims against Defendants in the State Court Matters, Plaintiffs were foreclosed from asserting those claims against Defendants in any subsequent litigation.  *See Wm Blanchard Co.*, 150 N.J. Super. at 290.  The Superior Court's denial of Plaintiffs' motion to amend serves as the necessary "measure of finality" to properly invoke the ECD.  *See Rycoline*, 109 F.3d at 889.

Finally, accepting Plaintiffs' argument that this case cannot be dismissed until final disposition of the State Court Matters results in an outcome directly contrary to the very purpose of the ECD.  Assuming, *arguendo*, this case is not yet "successive," it surely will become "successive" upon final disposition of the State Court Matters.  At that point, Defendants—in the

midst of litigating claims that are inherently intertwined with the claims in the State Court Matters—would seemingly be free to seek dismissal on the grounds that this action is barred under Rule 4:5-1(b)(2).  And, assuming Defendants establish the remaining two prongs of the party-joinder analysis and the Court finds that no lesser sanction is appropriate (as the Court has already found here), this case will be dismissed *with prejudice*.  As Magistrate Judge Dickson concluded, "[i]t would be a pointless and inexcusable waste of both the parties' and the Court's resources to continue litigating this matter in the interim." (R & R at 25).  Such a result defies the very purpose of the ECD—which, at bottom, is a doctrine of equity designed ""to eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time and effort of the parties, and promote fundamental fairness." *Alpha Beauty Distribs.*, 425 N.J. Super. at 104.[11]

## IV.    CONCLUSION

For the foregoing reasons, the Court adopts all portions of the R & R except Magistrate Judge Dickson's analysis regarding whether this action is a "successive action" for purposes of New Jersey Court Rule 4:5-1(b)(2).  Accordingly, the Court modifies Magistrate Judge Dickson's recommended disposition and GRANTS Defendants' motions to dismiss Plaintiffs' Complaint *with prejudice*.  An appropriate Order accompanies this Opinion.

                                                              *s/Esther Salas*
                                                              **Esther Salas, U.S.D.J.**

---

[11]     The ECD's policy of preventing piecemeal and wasteful litigation is as important today as ever.  The Court notes that, as of December 14, 2016, there are 38 judicial emergencies across the federal judiciary.  *See* http://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies.     There are two judicial emergencies in the District of New Jersey alone.  While the Court recognizes that "the scarcity of judicial resources alone does not justify denying a party the opportunity to litigate a claim," *see Northern Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 89-90 (2d Cir. 2000), the Court is satisfied that Plaintiffs had a "fair and reasonable" opportunity to litigate against Defendants in the State Court Matters and that Plaintiffs' failure to comply with Rule 4:5-1(b)(2) was both inexcusable and substantially prejudicial to Defendants' ability to defend itself in this action.  These additional safeguards ensure that party joinder under the ECD does not become a "trap for the unwary," *Hobart Bros. Co.*, 354 N.J. Super. at 229.